## Warner, Assignee, Appellant, v. Hare et al.

*Equity—Master's findings of facts—Review.*

Where the material assignments of error are to the findings of fact by the master, the Supreme Court will not reverse if the findings are based upon evidence sufficient to submit to a jury.

*Promissory notes—Rescission of contract to discount notes.*

Where a lender who has agreed to discount a borrower's note discovers, before he has paid over the money, that the borrower is insolvent, he may tender back the note given to him for discount, and refuse payment to the borrower, and the latter's assignee in trust for benefit of creditors has no superior rights to the borrower in the matter.

Argued Nov. 8, 1892. Appeal, No. 253, Oct. T., 1892, by plaintiff, Henry Warner, assignee in trust for benefit of creditors of Penn Bank, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1884, No. 170, on bill in equity against Thomas Hare et al., directors of Penn Bank. Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Bill for account. [See former writ, 2 Cent. R. 44.]

From the record it appeared that defendants claimed credit for the amount of four notes which they had paid to the Germania Savings Bank.

The case was referred to Geo. B. Hamilton, Esq., as master, who reported the facts as follows:

" The claim of credit for the payment of four notes to the Germania Savings Bank, each for $10,625, aggregating $42,500, is the question involved in this case, and upon that question the master finds the facts to be as follows:

" Counsel for plaintiff and defendants agreed upon the statement of facts contained in 'Exhibit No. 1,' of which the following is a copy :

" 'The account taken is of money collected on notes given by the Penn Bank to the accountants in May, 1884, as collateral to secure them as accommodation makers of certain notes for said bank, amounting in all to $289,000. The notes were indorsed by the Penn Bank, but shortly after they were given the bank closed its doors, and accountants proceeded to collect the collateral notes and pay the notes made by them, and have realized from these collections more than enough to pay all of said notes. Amongst the notes made by accountants for said bank were four promissory notes, which were discounted by the Germania Savings Bank a few days before the failure of the Penn Bank, but whose proceeds were never paid over to the Penn Bank by said Germania Bank, it having on the last business day prior to the Penn Bank failure given its check on other banks of that city to the order of the Penn Bank of said proceeds, but on the day of the failure, May 26th, stopped payment of said checks. The accountants were directors of the Penn Bank; had negotiated the discount of said notes by the Germania Bank, and knew the facts with respect to the nonpayment of said proceeds and the giving and stoppage of payment of said checks, and they also knew that the exceptant (the assignee of the Penn Bank) denied the liability of either the Penn Bank or the accountants upon said notes held by the Germania Savings Bank, and maintained that accountants had no right to and should not pay said notes out of the proceeds of said collateral. Having such knowledge, accountants paid said notes out of said money at the following dates and in the following amounts, viz. :

| | | | | | | |
|---|---|---|---|---|---|---|
| 1886, February 11, cash | . | . | . | $33,000 | 00 | |
| 1888, " " " | . | . | . | 6,300 | 00 | |
| " August 8, " | . | . | . | 1,500 | 00 | |
| 1889, February 9, " | . | . | . | 4,156 | 93 | |

|  |  |
|---|---|
| $44,956 | 93 |

and claim credit for said amounts in their account. To this credit the assignee excepts.

" 'The above facts are admitted, subject to the right of the

accountants to introduce evidence showing upon what grounds the Germania Savings Bank based their claim to collect said notes, notwithstanding the nonpayment of the proceeds of said notes, and the stoppage of payment of said checks.'

" The Germania Savings Bank, in connection with other banks of the city of Pittsburgh, agreed to discount $289,000 of the paper of certain of the directors of the Penn Bank to the order of the Penn Bank, to enable the said Penn Bank to resume payment, it having suspended.

" The Germania Savings Bank, May 23, 1884, discounted four notes, each for $10,625, made by W. N. Riddle, A. A. Hutchinson, J. O. Brown, F. B. Laughlin, T. Brent Swearingen, Geo. C. Davis, D. W. C. Carroll, S. Severance and Thomas Hare, to the order of the Penn Bank, and indorsed G. L. Reiber, cashier, payable, thirty, sixty, ninety days and four months; proceeds amounting to $41,942.21.

" On the books of the Germania Savings Bank, May 24, 1884, G. L. Reiber, cashier, is credited with the proceeds of the notes and debited with two checks, one on the German National for $20,000, the other on the Third National for $21,942.21.

" On the date of this discount the Germania Savings Bank held a cashier's check of Penn Bank for $88,000, dated May 17, 1884, to the order of Charles Seibert, cashier, and signed by R. J. Edie, assistant teller. The Germania Savings Bank owned this check prior to the suspension of the Penn Bank, May 21, 1884, and had protested it May 21, 1884.

" On Saturday, the 24th day of May, 1884, the Germania Savings Bank had given to the Penn Bank two checks aggregating the sum of $41,942.21, and held a cashier's check of the Penn Bank for $88,000. The latter check was on that day deposited with the Farmers Deposit National Bank and a deposit account opened. The Penn Bank cleared through the Farmers. These three checks, in the ordinary course of dealing, would have met in the clearing house Monday, May 26th, 1884, and the clearing house sheets as to these three checks would have shown the Germania Savings Bank debtor to the Penn Bank $41,942.21, and Penn Bank debtor to the Germania, $88,000, leaving a balance in favor of Germania of $46,057.79.

" The Germania Savings Bank ascertained on Monday, May 26, about noon, that the Penn Bank would not clear. When the

Farmers Deposit National Bank presented the $88,000 check
and demanded payment thereof, payment was refused, and the
check protested.   The Germania then stopped payment of the
two checks given as the proceeds of the four notes discounted
May 23, 1884.   The Farmers Deposit National Bank then
charged back to the Penn Bank these two checks.

"On May 26, 1884, when the Penn Bank account with the
Farmers Deposit National Bank was written up, there was a
balance due the Penn Bank of $23,218.29.

"On July 14, 1884, Henry Warner served a notice on the
Farmers Bank that the two checks of the German National
and Third National Banks, deposited by the Penn Bank for
collection, had been improperly returned to said banks, and
that the assignee would look to the Farmers Deposit National
Bank to make good the amount of the same.

"On May 27, 1884, the Germania Savings Bank notified the
Farmers Deposit National Bank to apply all money in its hands,
or whatever might thereafter be received, for or on account of
the Penn Bank, to the payment of the $88,000 cashier's check.

"On May 26, 1884, the Farmers Bank charged back to the
Germania Savings Bank the $88,000 check, and also tendered
back said check to said savings bank, which tender was refused.

"As against the deposit of the $88,000 check, the Germania
Savings Bank drew a check or checks on May 26, 1884, amount-
ing to $2,447.50, and on May 27, 1884, deposited the same
amount with the Farmers Deposit National Bank.

"At No. 302, September term, 1884, of C. P. No. 1 of Al-
legheny county, the Penn Bank, for use of Henry Warner, as-
signee, brought suit against the Farmers Deposit National
Bank to recover the deposit of the Penn Bank, amounting to
$23,218.29.   The Farmers Bank claimed the right to set off
the $88,000 check of the Penn Bank.   This the court refused,
and there was a verdict and judgment thereon in favor of plain-
tiff for $28,442.24.   On a writ of error to the Supreme Court
this judgment was reversed, and a venire facias de novo
awarded: Farmers Deposit National Bank v. Penn Bank, 123
Pa. 283.   On the second trial of the case the Farmers Deposit
National Bank was allowed to set off the cashier's check for
$88,000 as against the deposit, and there was a verdict for de-
fendant, with a certificate in favor of the Farmers Bank, as

552      WARNER, Appellant, v. HARE.

Master's Report.                          [154 Pa.

against the Penn Bank, for $64,781.71. After judgment on the verdict a writ of error was taken to the Supreme Court, and the judgment affirmed. Penn Bank v. Farmers Deposit National Bank, 130 Pa. 209.

" At No. 708, June term, 1885, of C. P. No. 1, the Farmers Deposit National Bank brought suit against the German National Bank to recover on the check of the Germania Savings Bank for $20,000, given to the Penn Bank.

" Also, at No. 707, June term, 1885, of C. P. No. 1, said bank brought suit against the Third National Bank to recover on the check given by the Germania Savings Bank to the Penn Bank for $21,942.21.

" The case against the German National Bank was tried and resulted in a verdict and judgment thereon in favor of plaintiff for $20,080, which, on writ of error to the Supreme Court, was reversed without a new venire. The Supreme Court holding that under the clearing house rules the German National Bank had a right to revoke a conditional acceptance, and return the check before 1 o'clock P. M.; that the Germania Savings Bank, the drawer, had a right to notify the drawee to stop payment, and the holder, having received the check for collection, had no right of action against the drawee: German National Bank v. Farmers Deposit National Bank, 118 Pa. 294.

" The Farmers Deposit National Bank proved before the auditor appointed to distribute the balance, shown by the first account of Henry Warner, assignee, the check for $88,000, and received thereon December 5, 1889, a dividend of $5,170. This dividend was paid over to the Germania Savings Bank; and, also, the certificate for $64,781.71, assigned to the same bank, December 5, 1889.

" It is thus seen:

" (1) That the Farmers Deposit National Bank paid out no money on the $88,000 check except the $2,447.50 returned to it; that it set off said check against the balance of the Penn Bank's deposit of $23,218.29, and obtained a certificate against the Penn Bank for $64,781.71 ; that it obtained a dividend on the face of said check amounting to $5,170.

" (2) That the Germania Savings Bank paid out no money on the four notes discounted ; that it received from the Farmers Deposit National Bank the $23,218.19 set off against the $88,000

check; an assignment of the certificate for $64,781.71; and the dividend of $5,170.

" (3) The four notes of $10,625 each were proved before the auditor to distribute the balance shown by the first account of Henry Warner, assignee, and the Germania Savings Bank received a dividend of $2,496.87 thereon.

" On the books of the Germania Savings Bank the proceeds were credited to G. L. Reiber, cashier, and, when he signed the proceeds check and received the checks on the Third National Bank and German National Bank, he was debited with the same.

" These two checks were not owned by the Farmers Deposit National Bank. The indorsement 'For Deposit Clearing House, May 26, 1884, C. F. McCoombs, A. Tell.,' shows they were for collection. The contention in the case tried was that they had been paid, because entered on the file and carried into the journal and not into the ledger.

" Under the decisions of the Supreme Court above set forth, the Farmers Deposit National Bank and the Germania Savings Bank had the right to act as they did.

" To meet the foregoing facts it is claimed by accountants that the agreement of discount between the Germania Savings Bank and the Penn Bank was that the Germania Savings Bank discounted the four joint and several promissory notes of $10,625 each, made by Thomas Hare et al., to the order of Penn Bank, and that the Penn Bank would pay the $88,000 cashier's check. That the Penn Bank failed to pay the $88,000 check May 26, 1884, and the Germania Savings Bank stopped payment of the two checks given for the proceeds of the discount. That the proceeds of the discount were to be applied to the $88,000 check, and that said bank did so apply them by giving credit on its books.

" In the original case the master found the facts :

" 1. That in pursuance to the agreement made between the Penn Bank of the one part, the defendants of the second part, and the 'outside banks' of the third part, and to carry the same into effect according to the foregoing resolution, $450,000 worth of the bills receivable of the Penn Bank were indorsed and delivered to Thomas Hare, agent for defendants, prior to the time the notes were signed and delivered.

" 2. That Thomas Hare et al. were accommodation makers of the paper to the order of the Penn Bank, and received no part of the proceeds thereof.

" Coming now to the question of discount, there are four witnesses, Seibert, Brown, Laughlin and Meyran. An analysis of the testimony of these witnesses is as follows: Seibert: Discounted notes. Personally did not conduct negotiations. Only knew what I heard and saw. J. O. Brown: On committee to go to banks and get proceeds of discount of $289,000 of paper. Did not go to Germania. It was not on the list. When the committee returned to the Penn Bank they asked W. N. Riddle about the Germania, and received for a reply, that is another matter. We could get no money from that bank. Laughlin's testimony is of the same import.

" Mr. Meyran, the president of the Germania Bank, and the man who carried on the negotiations, testifies that the discount was made on condition that the Penn Bank would pay the $88,000 check. ' We were to hand over $40,000 and they were to pay the $88,000 check.'

" The utmost that can be claimed, under the testimony, is that the Germania Savings Bank agreed to discount these four notes on condition that the $88,000 cashier's check of the Penn Bank should be paid. The testimony of Brown and Laughlin amounts to nothing as to the alleged agreement of discount, except as some evidence in corroboration of Mr. Meyran, that the discount was on condition that the $88,000 check should be paid. Mr. Meyran does not say that the proceeds of the discount were to be credited on the note of $88,000, or applied to its part payment. ' Q. In what way did you arrange to carry out the bargain that your check of $88,000 of the Penn Bank was to be paid, and, at the same time, the Penn Bank was to open and get the proceeds of these four notes ? A. Why, we just simply handed over our $40,000, the proceeds of these notes, and they would pay us our check of $88,000.' When questioned by counsel, he says this was to be carried out through the clearing house. His bank depositing its $88,000 check in the Farmers Bank, through which the Penn Bank cleared, and giving two checks for the proceeds to the Penn Bank. Now, Mr. Meyran knew that there would be other checks of the Penn Bank that would meet in the clearing house, and the pro-

ceeds of the discount of the four notes would be as available to pay these as to pay the $88,000 check. That is the operation of the clearing house as explained by him.

"Of course, if the Penn Bank had sufficient credits to meet the debits or supplied the cash to make up the deficiency, on Monday, May 26, 1884, all the checks on it, including the $88,000 cashier's check belonging to the Germania Bank, would have been paid. But such operation of the clearing house is certainly not an application, express or implied, of one particular check to another.

"The Germania Bank refused to receive back from the Farmers Bank the $88,000 check, and at No. 254 Sept. term, 1885, brought suit against the Farmers Bank for the amount of the deposit in the pass book received by it, when it deposited the $88,000 check. Mr. Meyran makes the affidavit of claim and counter affidavit, in which he claims for the whole amount. This is certainly inconsistent with a theory that the proceeds of the discount of the four notes were to be applied on this $88,000, for then there was a credit due on the check of $42,500 as the Germania Bank had not paid out one dollar on notes discounted. At that time, i. e., 1884, the Germania Bank claimed by its actions that it had not deposited the $88,000 check for collection, because it refused to receive back the check, objected to the Farmers Bank charging it back to it, brought suit against the Farmers Bank for the full amount of the check, and drew on it for the sum of $2,400. Such a course of action seems to the master to be inconsistent with an application of the proceeds of the discount to the $88,000 check, but it does seem consistent with Mr. Meyran's testimony: 'We were just to hand over our cash and they were to pay the $88,000 check.' If that be not correct, why did they have Reiber, cashier, sign a proceeds check, and then give him two other checks to get cashed? If the discount was not a cash one, why did the Germania Bank not at once credit the Penn Bank with the proceeds of the four notes as against the $88,000 check it then had in its possession? The Penn Bank opened Friday, May 23, 1884, about 2 o'clock P. M., and remained open all day Saturday; during all this time the $88,000 check could have been presented at the counter of the Penn Bank and the balance above the proceeds of the discount of the four notes would have been paid.

" The Germania Bank itself, as shown by its books, did not act on the theory that the proceeds were to be applied to the payment of the $88,000 check. It was not until December 5, 1889, that it made any application thereto on its own books.

" The master, therefore, finds the facts :

" (1) [That the discount of the four joint and several promissory notes of Thomas Hare et al. to the order of the Penn Bank for $10,625, each, at thirty, sixty, ninety days, and four months, was a cash discount, on condition that the cashier's check of the Penn Bank for $88,000, then in its possession, would be paid,] [2] but there was no express or implied agreement to apply the proceeds of the discount to the $88,000 check; that the Penn Bank did not pay said check for $88,000, and, thereupon, the Germania Savings Bank refused to pay the proceeds of the discount and stopped payment of the checks given therefor.

" (2) [That this agreement of discount was made by a committee of the directors of the Penn Bank, representing the Penn Bank and the makers of the notes, and that the makers of the notes were parties to the agreement.] [2]

" It is contended on the part of exceptant that the failure of the Penn Bank to pay the $88,000 check, and the stoppage of payment by the Germania Savings Bank of the checks given, was a rescission of the contract of discount, and there could be no recovery on the notes, either against the Penn Bank or the makers.

" In Dougherty v. Central Bank, 93 Pa. 227, it was held upon analogy of the vendor's right of stoppage in transitu that where a lender before he pays over money on a borrower's note discovers that the borrower is insolvent, he may tender back the discounted note and refuse payment to the borrower, and the latter's assignee has no superior rights to him in the matter. ' The consideration so failed that the defendant was warranted in tendering it (the note) back, and an equity arises against the legal plaintiffs which prevents their enforcement of the contract.'

" The same principle is decided in Lancaster National Bank v. Huver, Assignee, 114 Pa. 216. In the latter case a voluntary assignment had occurred between the discount and before the withdrawal of the money. The assignee, however, had no higher standing than the assignor.

" Were there nothing more in this case than that Thomas Hare et al. were accommodation makers, and the proceeds of the discount had not been paid to the Penn Bank, the payee, the master would have no hesitation in holding that the action of the Germania Savings Bank was a rescission of the whole contract, and it should not only return the notes, but, also, charge off the discount.

" But [the makers of the notes were not only accommodation makers of the notes, but were also parties to the contract: ' We will discount your paper if you pay our check.' The Germania Savings Bank might well say : ' We will stop our money going into the coffers of an insolvent bank, and hold the makers of the notes to see to the payment of the $88,000 check.'] [4]   The $88,000 check had not been paid.

" Again : The party now claiming that the contract of discount was rescinded is the assignee of the Penn Bank. He claimed that the banks upon which the Germania Savings Bank had given checks were liable to him for the amounts thereof, and compelled the Farmers Deposit National Bank to bring suits thereon.   If he, as representative of the Penn Bank, had attempted to rescind, he would have had to tender back the two checks within a reasonable time.   He was not in position to do so.   It is not until after an adverse decision of the Supreme Court in January, 1888, that there is any suggestion that the contract was rescinded.   The master is, therefore, of the opinion that the nonpayment of the proceeds of discount was not a rescission of the contract of discount.

" We come now to the consideration of the questions : (1) Did the failure to pay over the proceeds of discount give the Penn Bank, the payee, a defence to the payment of the notes ?   (2) Was such defence available to the makers ? (3) Independently of the above, had the makers a defence ?

" The Penn Bank claims a defence in that it did not receive the proceeds of discount.   The proceeds were carried on the books of the Germania Bank to the credit of G. L. Reiber, cashier.

The accountant's claim : (1) That the discount made the Germania Bank complete purchasers of the notes and the party for whom the discount is made the owner of the proceeds.   This proposition is sustained by the cases of Heil v. Girard Bank,

30 Pa. 136; Carstairs v. Bates, 3 Campbell, 301; St. Louis, etc., Co. v. Johnston, 27 Fed. R. 243, but these were cases between the bank and its customer. The proceeds are credited to the account of the customer. He gets a new credit and can check on the same. In those cases, although the bank became insolvent, as in St. Louis, etc., Co., v. Johnston, before any of the proceeds were drawn, yet the maker could not get back his paper and be charged with the proceeds. The principle of those cases does not seem to the master to apply to this case because this was a special discount for a special purpose, and was for cash; the giving of checks for the proceeds shows that fact. The mere entry in the books of a charge does not vary the transaction. 'There is no magic in bookkeeping'—especially bank bookkeeping, as illustrated by the Penn Bank.

" (2) That in a suit by the Penn Bank against the Germania Bank for the proceeds of discount the latter could have set off or defalcated the $88,000 check. That is, no doubt, true, if the Germania Bank had the check, but it did not, and at that time disclaimed ownership of it. At the time the notes were paid by the makers, the $88,000 check had already been set off against the Penn Bank deposit for $23,318.29, and a certificate for the balance in favor of the Farmers Deposit National Bank. The $88,000 check could not be set off again: Simes v. Zane, 24 Pa. 242.

" Thus far the Penn Bank, the payee, had a defence to the notes, therefore the accommodation makers could avail themselves of such defence. They are treated as sureties. As a general rule, at least, a surety is allowed to stand upon the rights of his principal, and set up any defence that the principal could: Gunnis v. Weigley, 114 Pa. 191.

" So far the master has considered the case independent of the condition attached to the discount, to wit, ' we will discount your paper if you pay our $88,000 check.' [As was said before, this was not an ordinary discount; it was coupled with a condition, and that condition had sufficient consideration to support it; that, even on the failure to pay over the cash proceeds of the discount, the Penn Bank could not have recovered either of the notes in an action of replevin, or their value in trover, without fulfilling the conditions of the contract.] [6]    Therefore the Penn Bank had not a complete defence to the notes.

"Assume, however, that the master is wrong in this, we come to the question, had the makers of the notes any defence thereto independently of the Penn Bank defences? ': The maker of an accommodation note cannot set up the want of consideration as a defence against it in the hands of a third person, though it be there as collateral security merely. He who chooses to put himself in the front of a negotiable instrument for the benefit of his friend must abide the consequences, and has no more right to complain if his friend accommodates himself by pledging it for an old debt than if he had used it in any other way.' Accommodation paper is a loan of the maker's credit without restriction as to the manner of its use: Lord v. Ocean Bank, 20 Pa. 384. As between the maker and the payee there is an available defence, but the maker cannot complain of a subsequent holder when called upon to perform all that he has promised: Moore v. Baird, 30 Pa. 138.

"That, in the opinion of the master, is the decisive point in this case. While it may be doubtful whether or not the Germania Savings Bank is a third party within the ruling of Lord v. Ocean Bank, and that line of cases; but assume that it is not, then the accommodation makers could have set up the failure to pay over the proceeds of discount; [but how could they defend against the other consideration, to wit: To pay the $88,000 check? They were parties to this agreement, and until the $88,000 check was paid could not defend against payment of the notes.] [11] For this reason the master is of the opinion that the credit should be allowed.

In answer to an exception by appellant, the master further found "that the Germania Savings Bank knew at and after the time it agreed to discount the four notes in question that the makers of said notes were accommodation makers."

Exceptions, among others, to the findings as above in brackets, were dismissed, and a decree entered in accordance with the recommendation of the master.

*Errors assigned* were dismissing exceptions, quoting them.

*H. A. Miller* and *A. M. Brown*, for appellant, cited: Marsh v. Consolidation Bank, 48 Pa. 510; Gunniss v. Weigley, 114 Pa. 191; Schwartzkopf v. Hill, 3 Cent. R. 913; Schackamax-

on Bank v. Kinsler, 16 W. N. 509; Lord v. Ocean Bank, 20 Pa. 384; Moore v. Baird, 30 Pa. 138; Pearsoll v. Chapin, 44 Pa. 9; Lancaster National Bank v. Huver, 114 Pa. 216; Simes v. Zane, 24 Pa. 242; Schober v. Accommodation Ass'n, 35 Pa. 230; Phila., etc., Loan Ass'n v. Moore, 47 Pa. 239; Crist v. Brindle, 2 Rawle, 125; Hollister v. Davis, 54 Pa. 508; Simpson v. Pinkerton, 10 W. N. 423; Tagg v. Bowman, 108 Pa. 273; Jacoby v. Gurier, 6 S. & R. 448.

*D. T. Watson, Knox & Reed* and *Isaac Van Voorhis* with him, for appellee, cited: Warner's Ap., 2 Cent. R. 44; St. Louis & S. F. Co. v. Johnston, 27 Fed. R. 245; Carstairs v. Bates, 3 Campbell, 301; Oil Well Supply Co. v. Exchange Bank, 131 Pa. 100; Lord v. Ocean Bank, 20 Pa. 384; Bosler v. Exchange Bank, 4 Pa. 32; Mechanics Bank's Ap., 48 Pa. 57.

PER CURIAM, January 3, 1893:

All of the material specifications of error are to the findings of fact by the master. We are not convinced that the learned master has committed any substantial error in this respect, or that he has found any fact without evidence, or without sufficient evidence to submit to a jury.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.