## Penn Bank's Assigned Estate. Germania Savings Bank's Appeal.

*Assignment for creditors—Banks—Checks—Contract—Marshaling assets —Distribution.*

The Germania Bank having a check for $88,000 upon the Penn Bank, which the latter was unable to pay in full, agreed to lend the Penn Bank $40,000, the proceeds of the discount of four notes made by the directors of the Penn Bank, and look to the makers of the notes for payment. The Penn Bank was then to pay the whole amount of the check. The Germania Bank received the four notes and drew checks in favor of the Penn Bank for the proceeds, but before they were paid it was found that the Penn Bank would not be able to pay the $88,000 check. Payment of the checks for the proceeds of the notes was then stopped. *Held* (1) that the proceeds of the notes was in equity a partial payment of the $88,000 check, and (2) that the Germania Bank, as against other creditors of the Penn Bank, was not entitled to include the amount of the four notes in its claim, and to receive a dividend on the full sum of $88,000.

Argued Nov. 1, 1894. Appeal, No. 221, Oct. T., 1894, by the Germania Savings Bank, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1884, No. 23, confirming report of auditor. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report, distributing balance shown by the third and final account of assignee of Penn Bank.

The auditor, Thomas D. Carnahan, Esq., found the facts as follows:

" On May 28, 1884, the Penn Bank made and executed to Henry Warner a deed of voluntary assignment for the benefit of its creditors, and on the same day said deed was duly recorded.

" The Penn Bank, several days prior to the assignment, had given to the Germania Savings Bank a check for $88,000, dated May 17, 1884, payable to the order of Charles Seibert, Esq., treasurer, and signed by R. J. Eddie, assistant teller. The check itself has not been presented to the auditor, but it is conceded that, at and prior to the time of the assignment, the Penn Bank was indebted to the Germania Savings Bank, $88,000, and that said indebtedness was evidenced by said check of its assistant teller, drawn to the order of the treasurer of the Germania Bank, and passed into the custody of said last named bank as its property, prior to the date of the assignment.

" Prior to the date of the assignment, the Germania Savings Bank agreed to discount and did discount for the Penn Bank four promissory notes, each dated May 23, 1884, each for the sum of $10,625, payable at 30, 60, 90 days and four months, respectively, each made by W. N. Riddle, A. A. Hutchinson, J. O. Brown, F. B. Laughlin, T. Brent Swearingen, George C. Davis, D. W. C. Carroll, S. Severance and Thos. Hare, and each indorsed 'G. L. Reiber, cashier.' These notes, aggregating $42,500, were discounted by the Germania Savings Bank, either on May 23, 1884, or May 24, 1884. (Mr. Charles Seibert, the secretary and treasurer of the Germania Savings Bank, at that time, testifies that to the best of his recollection the notes. were discounted on May 23, but in the books of the Germania Bank it appears that the proceeds of these notes, amounting to $41,942.21, were credited on May 24, 1884, to 'G. L. Reiber, cashier.') On May 24, 'G. L. Reiber, cashier,' was charged with the proceeds of discount, for which he received two checks, one on the German National Bank of Pittsburg, for amounts aggregating $41,942.21. Mr. Reiber, the cashier of the Penn Bank, had, on the morning of the 24th of May, 1894, sent a check on the Germania Savings Bank to that bank for the amount of the proceeds of the discount of the four notes, and the Germania Savings Bank thereupon made two checks, to the order of the Penn Bank, each dated May 24, 1884, one on the Third National Bank for $21,942.21 and the other on the German National Bank for $20,000. These checks were delivered to the Penn Bank on May 24th. On the same day (May 24th,) the Germania Savings Bank deposited with the Farmers' Deposit National Bank of Pittsburg, which repre-

sented the Penn Bank in the Clearing House, the $88,000 check for collection, and the Penn Bank deposited with the Farmers' Deposit National Bank, also for collection, the two checks for $41,942.21 on the German National and the Third National Banks.

["The Penn Bank had closed its doors on May 21, 1884, and did not re-open them to the public until May 23, 1884. In the meanwhile, for the purpose of enabling it to re-open its doors and resume business, certain banks of the city of Pittsburg, including the Germania Savings Bank, agreed to loan it money, and these four notes, given by the directors of the Penn Bank, were discounted by the Germania Savings Bank, in pursuance of said agreement.] [3] May 24th was Saturday, and the three checks last mentioned were not presented for payment until May 26th, on which date they were presented through the Clearing House. The Penn Bank was unable to pay its check, and refused payment at the time it was presented. The other two checks passed through the Clearing House and went to the banks on which they were drawn, but they were not paid, because the officers of the Germania Savings Bank, about noon of May 26, 1884, and immediately on receiving information that the Penn Bank had refused to pay the $88,000 check, stopped their payment.

"The steps taken to stop payment were within the rules of the Clearing House Association, and the Germania Savings Bank had the right to do so. The two checks having been returned to the Farmers' Deposit National Bank, that bank charged them back to the Penn Bank. On May 26, 1884, the Penn Bank again closed its doors, and on May 28th made an assignment. On May 26th the Farmers' Deposit National Bank charged back to the Germania Savings Bank the $88,000 check, and tendered the check to the Germania Bank, which tender was refused. On the same day the Germania Bank had checked out $2,447.50 as against the $88,000, but on the next day it returned to the Farmers' Bank the money checked out. Subsequently, at the instance of the assignee of the Penn Bank, the Farmers' Deposit National Bank entered suits against the Third National Bank and the German National Bank, to recover on the two checks given by the Germania Savings Bank on these banks, to the order of the Penn Bank.

"These suits were brought in this court at Nos. 707 and 708 June Term, 1885, respectively. The one against the German National Bank was tried, and a verdict and judgment were had thereon for the amount of the claim, but the Supreme Court reversed the judgment, on the ground that the Germania Savings Bank had the right to stop payment of the check; that it exercised that right before the actual payment; that it was within the rules of the Clearing House Association in doing so, and that the Farmers' Deposit National Bank, being the mere agent of the Penn Bank for collection, had no right of action against the German National Bank.

"This case is reported in 118 Pa. 294. The suit against the Third National Bank, because of this decision, was not tried.

"On May 27, 1884, the Germania Savings Bank sent a written notice to the Farmers' Deposit National Bank to apply all moneys in its hands or thereafter to be received for or on account of the Penn Bank, to the payment of the $88,000 check. The Farmers' Bank had, at that time, and on the day of the assignment, $23,218.29 which belonged to the Penn Bank. At No. 302 Sept. Term, 1884, of this court, the Penn Bank, for use of Henry Warner, Assignee, brought suit against the Farmers' Deposit National Bank to recover the amount of this deposit of the Penn Bank. The Farmers' Bank claimed the right to set off the $88,000 check, and the Supreme Court sustained its claim. The case is reported in 123 Pa. 283. A venire facias de novo having been awarded, the Farmers' Bank was given, at the second trial, a certificate as against the Penn Bank for $64,781.71, being the difference between $88,000 and $23,218.29. This judgment was affirmed by the Supreme Court in 130 Pa. 209.

"In the meanwhile, the Farmers' Deposit National Bank, being the holder of the $88,000 check, presented it to Hon. C. Magee, the auditor appointed to distribute the funds in the hands of the assignee, as shown by his first account. The auditor distributed to this check the sum of $5,170. The four notes for $10,625 each were also presented to the said auditor, and he distributed to the Germania Savings Bank the sum of $2,496.87 on account thereof, the sums being the pro rata shares to which the respective parties were entitled on the face of their claims. The notes themselves were paid to the

Germania Savings Bank by the Directors of the Penn Bank afterwards.

" On Dec. 5, 1889, the foregoing litigation having been concluded, and the Farmers' Deposit National Bank, so far as concerned the $88,000 check, having acted as mere agent of the Germania Savings Bank, the Farmers' Bank returned to the Germania Savings Bank the check for $88,000, and at the same time paid to said Germania Bank the $23,218.29 which it had retained out of the funds of the Penn Bank, and the $5,170 which had been allowed by the auditor as a dividend on the $88,000 check. It also assigned to the Germania Bank the certificate for $64,781.71 which it had obtained against the Penn Bank. The Germania Savings Bank thereupon entered in its books the following statement of accounts:

### FARMERS DEPOSIT NATIONAL BANK, PITTSBURG.

| 1884. | | 1884. | |
|---|---|---|---|
| May 24, Cash....$ 88,000 00 | | May 26, Check....$ 2,447 50 | |
| " 27, " .... 2,447 50 | | Dec. 5, '89, Cash, 23,218 29 | |
| $90,447 50 | | " 5, '89, Assignm't of claim against Penn Bk. 64,781 71 | |
| | | $90,447 50 | |

### PENN BANK, PITTSBURG.

| Dec. 5, '89, Farmers Deposit Nat'l Bank assignm't of claim, Bal....$64,781 71 | | May 26, '84 Proceeds .........$41,942 21 |
|---|---|---|
| $64,781 71 | | Dec. 5, '89, Dividend paid by Assignee (per Farmers Deposit National Bank).. 5,170.00 |
| Balance.........$17,669 50 | | Balance.......... 17,669,50 |
| | | $64,781 71 |

" In the proceeding in equity between Henry Warner, assignee, and Thos. Hare et al., directors of the Penn Bank, above referred to, in which the assignee endeavored, inter alia, to compel the directors to account to him for the four notes,

aggregating $42,500, which the Germania Savings Bank had discounted, and for the proceeds of which said bank had given its check on the German National Bank and Third National Bank, payable to the order of the Penn Bank, and which notes the directors had subsequently paid to the Germania Savings Bank, the directors claimed credit for the payment of said notes. The assignee denied that they were under any obligation to pay them, and that they had any right to pay them. The master allowed them credit for the payment of said notes. This court sustained the master, and the Supreme Court, at No. 253 Oct. Term, 1892, affirmed the decree of this court. Warner, Assignee, Appellant v. Hare et al., 154 Pa. 548.

" [From the above statement and finding of facts, it is apparent that, on the day of the assignment, to wit, May 28, 1884, and for some days prior thereto, the Penn Bank was indebted to the Germania Savings Bank to the amount of $88,000, and the Germania Savings Bank was indebted to the Penn Bank to the amount of $41,942.21, the proceeds of the four notes which it had discounted and for which its checks were then outstanding. There can be no question about this statement of affairs so far as the facts are concerned. They are admitted by the officers of the Germania Savings Bank, in the case of Warner, Assignee, v. Hare et al., above referred to, and by Mr. Guthrie in his argument before the auditor in this proceeding.

" The auditor, therefore, finds, as matter of fact, that, on and prior to May 28, 1884, the date of the assignment, which is the time to which we must look to ascertain the rights of the parties, the Germania Savings Bank of Pittsburg was indebted to the Penn Bank of Pittsburg $41,942.21, and that said Penn Bank was indebted to the said Germania Savings Bank $88,000."] [4]

The auditor refused to allow a dividend to the Germania Bank on the full sum of $88,000, but deducted from that sum the proceeds of discount of the directors' notes.

Exceptions to the auditor's report were overruled, and a decree entered confirming the report.

*Errors assigned* were in overruling exceptions, and confirming report, quoting exceptions and decree.

*George W. Guthrie,* for appellant.—The rights of creditors in this distribution are fixed by their relations to the debtor at the date of the assignment: Miller's Ap., 35 Pa. 481; Jordan's Ap., 107 Pa. 75.

The rule is clear that no subsequent reduction of the debt, short of payment in full, can in any way affect the creditor's right to a dividend on the full amount of his claim: Morris v. Olwine, 22 Pa. 441; Patten's Ap., 45 Pa. 151; Brough's Est., 71 Pa. 460; Graeff's Ap., 79 Pa. 146; Miller's Est., 82 Pa. 113.

The Penn Bank, as maker of the teller's check, was indebted to the holder thereof in the full sum of $88,000: Penn Bank v. Farmers' Deposit Nat. Bank, 123 Pa. 283; 130 Pa. 209; Warner v. Hare, 154 Pa. 548.

Had the agreement to discount the notes been an absolute one, as found by the auditor, the Germania would have had the right, on the discovery of the insolvency of the Penn, to rescind the agreement and refuse to pay over the money (Dougherty Bros. & Co. v. Bank, 93 Pa. 227) but in that event its duty would have been to return the notes to the Penn.

The judgment in the case of Penn Bank, for use of Henry Warner v. Farmers' Deposit National Bank, 123 Pa. 283, 130 Pa. 209, was a final adjudication that on the day of the assignment the Penn Bank was indebted to the Farmers in the full amount of this check: Reading Iron Works' Est., 149 Pa. 182; Pittsburgh, etc. Rd. Co.'s Ap., 2 Grant, 151; Sponsler's Ap., 127 Pa. 410; Stroud's Ap., 109 Pa. 326; Bishop v. Goodhart, 135 Pa. 374.

If a set-off for anything less than the full amount of the debt can ever be used to defeat the right of a creditor to a dividend on the full amount of his claim (which we do not admit), it can only be when the debts are mutual and both due and payable at the time of the assignment, or at least at the time the set-off was allowed: Huling v. Hugg, 1 W. & S. 418; Pennell v. Grubb, 13 Pa. 552; Smith v. Ewer, 32 Pa. 116; Speers v. Sterrett, 29 Pa. 192; Zuck v. McClure & Co., 98 Pa. 541; Roig v. Tim, 103 Pa. 115; Chipman v. Bank, 120 Pa. 86. If this agreement to discount was not on condition, it was bound by the statute of limitations: Gilmore v. Reed, 76 Pa. 462; Wisecarver v. Kincaid, 83 Pa. 100; Light's Est., 136 Pa. 211; Mayfarth's Ap., 1 Cent. R. 398.

The right of a creditor to a dividend depends on the amount of his claim at the date of the assignment, and cannot be reduced by any subsequent credits short of full payment, no matter from what source they may have come: Morris v. Olwine, 22 Pa. 441; Miller's Ap., 35 Pa. 481; Patten's Ap., 45 Pa. 151; Brough's Est., 71 Pa. 460; Graeff's Ap., 79 Pa. 148; Miller's Est., 82 Pa. 113; Hinkley v. Walters, 8 Watts, 260; Beatty v. Bordwell, 91 Pa. 438; Gilmore v. Reed, 76 Pa. 462; Wisecarver v. Kincaid, 83 Pa. 100; Reed v. Marshall, 90 Pa. 345; Milne's Ap., 99 Pa. 483; Light's Est., 136 Pa. 211; Stewart, Assignee, v. Bank, 6 W. N. 399; Chipman v. Bank, 120 Pa. 86; Humboldt Safe Deposit & Trust Co.'s Assigned Est., 3 Pa. C. C. R. 621; Receivers v. Paterson Gas Light Co., 3 Zabriskie, 283; Light v. Leininger, 8 Pa. 403; Jordan v. Sharlock, 84 Pa. 366; Morrison's Ap., 93 Pa. 326; Worrall's Ap., 41 Pa. 524; Datesman's Ap., 77 Pa. 243.

*H. A. Miller*, for appellee.—In order to make a judgment in one case conclusive in another case, the parties must be the same, and the precise issue must be in question in both cases: Hibshman v. Dulleban, 4 Watts, 183; Tams v. Lewis, 42 Pa. 402; Lewis's Ap., 67 Pa. 165; Forcey's Ap., 106 Pa. 509; Schriver v. Eckenrode, 87 Pa. 213; Cavanaugh v. Buehler, 120 Pa. 441; Sheble v. Strong, 128 Pa. 315.

The claim of the Penn Bank against the Germania Savings Bank was due at the time of the assignment, as shown by the testimony, and also by the admission of the appellant itself. But even if it had not then been due and subsequently became so, still the Penn Bank could set off against the Germania's claim: Jordan v. Sharlock, 84 Pa. 366.

Appellant neither pleaded nor set up the plea of the statute of limitations against the allowance of the claim against the Germania Savings Bank before the auditor.

The principle of marshaling assets as applied in the cases of Morris v. Olwine, 22 Pa. 441; Miller's Ap., 35 Pa. 481; Patten's Ap., 45 Pa. 151; Brough's Est., 71 Pa. 460; Graeff's Ap., 79 Pa. 148; Miller's Est., 82 Pa. 113, does not apply in this case. The underlying principle in all these cases is, that the creditor collecting out of property not passing by the assignment, or out of collateral securities which he had for his debt,

or from indorsers or sureties, guarantors and the like, does not reduce the assigned estate nor does he reduce the proportionate share which the remaining creditors of the assignor have in the trust or assigned estate.

The right of each claimant to be heard in support of his claim and in opposition to every claimant who interferes with it, is necessarily involved in the right to demand payment out of the fund: Hart's Ap., 96 Pa. 374; Rice's Ap., 79 Pa. 182.

OPINION BY MR. JUSTICE MITCHELL, Jan. 7, 1895:

The facts are mainly undisputed, the only difference as to them between the parties being whether the appellant's agreement to discount the four notes for the Penn Bank was conditional on the payment of the latter's check for $88,000. But if we look at the substance of the agreement, and what took place under it, the question whether it was conditional or not becomes immaterial. Taking its own version, the appellant was to be paid the check of eighty eight thousand dollars, and, to enable the Penn Bank to pay it, appellant was to lend the Penn forty thousand dollars the proceeds of the discount of the four notes made by the directors of the Penn, and look to the makers of the notes for payment. In effect this agreement was nothing more or less than a division by appellant of its claim against the Penn Bank into two portions—one of which was to be paid by the Penn itself at once, and the other by the makers of the notes as the latter matured. If the agreement had been carried out as made, the appellant would have received eighty eight thousand dollars at once for payment in full, and would have paid out forty thousand for which it would have held the four notes of ten thousand each, made by the guaranteeing directors of the Penn. Instead of going through however the plan failed, the Penn was unable to pay its eighty eight thousand dollar check, but the appellant got the four notes, and when it stopped payment of the checks it had drawn in favor of the cashier of the Penn for the proceeds, it had thus got or kept the notes for nothing. The whole consideration to the directors of the Penn for making the notes was to obtain the loan of forty thousand dollars, to help, with other loans, the Penn to open its doors again and resume payment. The appellant got those notes on the promise to make the loan, but in fact never made it, and never parted

with a dollar of money in return for them. Stripped of immaterial details and the complications of mere book-keeping, this is the whole case.

It is too late for appellant to say that these notes should not be deducted from its claim on the Penn Bank's check. Conceding that when that check was not paid on May 26, 1884, the agreement was broken and it had a right to stop payment of its own checks in favor of Penn's cashier, none the less, it had by the transaction received forty thousand dollars for which it had given nothing. Its duty was, on stopping its own checks, to have returned the notes to their makers thus rescinding the agreement altogether and restoring the status quo. But it did not do so, on the contrary it kept the notes and exacted payment from their makers. To this it had not the shadow of a claim except as a payment on account of the eighty eight thousand dollar check. It is not worth while to discuss whether this is a technical set-off, or a defalcation under our statute, because it is entirely clear that it was in equity a partial payment. Appellant's own dealings with these forty thousand dollars show that it treated them as a partial payment. As already said, there was no other justification for enforcing payment of the notes, or retaining a single dollar of the proceeds.

The case of Warner v. Hare, 154 Pa. 548, decides nothing that affects this matter. That case was between other parties, and the issue was not the amount of the Penn Bank's debt to the present appellant but the right of the makers of the notes to a credit for payment of them in an account for collaterals received from the Penn Bank. The amount of the appellant's judgment was not in controversy there, and the decision is not an adjudication of such amount that is conclusive upon the other creditors here.

Nor is there any place here for the application of Miller's Appeal, 35 Pa. 481, and other cases which hold that a creditor of an insolvent estate is entitled to a dividend on his whole claim at the time of the assignment although he may have received subsequently a partial payment from collaterals or another fund. The directors' notes for forty thousand dollars received by the appellant were not collaterals for or on account of the present claim on the eighty eight thousand dollar check, but for the forty thousand loan to the Penn Bank which was

never made, and as already said the retention of the notes and enforcing payment can only be sustained as a direct partial payment in reduction of the claim. The directors making it were protected by the transfer of securities of the Penn Bank, which thus diminished the assets going to the other creditors. It was not therefore a dividend received by appellant from another fund but a diminution of the same fund as that to which the creditors in this proceeding had to look, and as against those creditors a dividend now on the full sum of eighty eight thousand dollars would, as well said by the learned auditor, be a "payment a second time on those notes."

Decree affirmed with costs.