# Scranton, Appellant, *v.* Scranton Coal Company et al.

*Mines and mining—City streets—Surface support—Bill in equity —Injunction—Refusal—Findings of fact—Appeal.*

1. Findings of fact in equity on conflicting evidence are entitled to the same weight as the verdict of a jury and will not be set aside on appeal except for manifest error.

2. A bill in equity to enjoin the removal of coal underlying a city street on the ground that such removal would cause a subsidence of the surface to the damage of the streets and peril of the traveling public, was properly dismissed where it appeared that the surface had been sold without the right of support and the streets were thereafter dedicated by the owners of the surface, that the right of surface support had not been secured from the owners of the underlying coal, and the chancellor found upon conflicting evidence that there was only a remote possibility of danger to the traveling public from the removal of the coal.

Argued Feb. 21, 1916.  Appeal, No. 37, Jan. T., 1915, by plaintiff, from decree of C. P. Lackawanna Co., Jan. T., 1914, No. 9, in equity, refusing an injunction, in case of City of Scranton v. Scranton Coal Company, and Elk Hill Coal & Iron Company.  Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.  Affirmed.

Bill in equity for an injunction.  Before NEWCOMB, J.

The opinion of the Supreme Court states the facts.

The court on final hearing dismissed the bill.  Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*David J. Davis,* City Solicitor, and *H. C. Reynolds,* with them *George L. Peck,* for appellant.

*Everett Warren* and *James H. Torrey,* with them *James E. Burr,* for appellees.

OPINION BY MR. JUSTICE WALLING, January 22, 1917:

This bill in equity was filed to restrain the mining of coal under certain public streets.

Scranton is a city of the second class; and defendants are duly chartered mining companies.  In the northern part of the City of Scranton, and situate upon the east bank of the Lackawanna river, is a tract of 72 acres of

land, on which there are certain public streets, avenues and boulevards, and which is underlaid with several veins of anthracite coal. The title to the coal has been severed from that of the surface and is in the Pennsylvania Coal Company, which made a lease thereof to the defendants about 1901. Two of the streets above referred to were duly established before and others after such severance. The surface was sold without right of support, and the streets thereafter established were dedicated by the owners of the surface only, and without right of support being secured from the owners of the subsurface. The coal under this tract was subjected to what is termed "first mining," by which about 60 per cent. thereof was removed, and the balance left in form of pillars for surface support. By the process known as "second mining" the defendants were when this bill was filed and still are proceeding to remove the balance of the coal, without providing artificial supports. This bill was filed on the theory that such removal would cause a subsidence of the surface, to the damage of the streets and peril of the traveling public.

Defendants are operating in what is known as the "Big vein," which is about 14 feet thick, and above which there is over one hundred feet of rock formation. They are also operating in what is called the "Clark vein," which is about seven feet thick and above which there is some three hundred feet of rock formation.

The evidence is conflicting as to the exact nature of the formation overlying said veins of coal, that for plaintiff tending to show the presence of such large quantities of quicksand and fireclay as to greatly increase the danger of surface subsidence by removal of the underlying coal; this is denied by the evidence for defendants. It is the theory of defendants, and supported by some evidence, that as the overlying rock breaks up and falls into the excavation made by the removal of the coal the fragments fill from one-third to one-half more space than the solid rock, and by reason thereof choke up the open-

ing without surface disturbance, especially as to the deeper veins. However, the defendants' recent mining operations seem to have resulted in some surface subsidence, more on private property than in the streets. The greatest subsidence at any point previous to the trial of this case was two and six-tenths feet. The evidence is conflicting as to whether such subsidence as may result from second mining will be sudden or gradual, and as to whether the ordinary use of the streets will be affected thereby. This is a populous neighborhood, and plaintiff contends that the subsidence of its streets causes an added danger because of damage to gas, water and sewer pipes located therein. This action is based mainly on the Act of July 26, 1913, P. L. 1439, regulating the mining out and removal of coal, etc. Pursuant to Section 1 of this act, plaintiff by ordinance created a Bureau of Mine Inspection and Surface Support, but later the ordinance was repealed.

Much testimony was taken before the learned chancellor, who presided at the trial of this case, and from which he found the controlling facts in favor of the defendants; and thereupon the court below dismissed the bill.

The chancellor finds, among other facts, the following:

"Within the past year there have been several surface disturbances along the easterly portion of the tract, indicated by cracks and subsidence, occasioned no doubt by the withdrawal of pillars in the Big vein, which is proceeding from the easterly boundary. These disturbances have been gradual in their progress and of small extent. The point of greatest subsidence is at one of the Morel greenhouses where it amounted to 2 6-10ths feet. Private property has been injured, but the only street affected is Parke where there was a sag without any break, and so slight as to occasion no interference with its use nor any repairs whatever......

"The natural conditions here are favorable for the operation with minimum danger to the surface, because, (1)

the pitch of the vein is comparatively slight, thus minimizing the probability of a lateral movement in any event; (2) the roof is of a character which breaks off readily from point to point as the pillars are withdrawn; and (3), the overlying rock strata are so thick that the voids choke up rapidly after a fall, and for the most part the displacement is complete before it reaches the surface......

"If all the pillars should be gradually removed here so the fall is brought on step by step, the most reasonable probability is that scattered disturbances will occur from time to time where a fissure may form and break through to the surface, attended no doubt with some injury to private property; but that, in the future as in the past, they will come on gradually so that as regards the streets which are the only subjects of relief to be considered the worst that can happen will be cracking and fissures which would require filling up. This is the only inference consistent with the great weight of the evidence, and the fact is accordingly so found. That the improvements on private property would in such case be liable to injury, is not disputed; but that the personal safety of the traveling public is menaced by the mining operations does not appear and is not so found.

"Caving has taken place in that part of the Clark where the pillars have been removed; but it made no impression on either the surface or the intervening Big vein. The circumstance tends to support the uncontradicted opinion of various engineers and practical operators that, in view of the 250 feet of overlying rock, the surface will in no event be affected by the operations in that vein. Any supposition to the contrary would seem to be unwarranted and it is accordingly found that there is only a remote possibility of any disturbance of the surface from that source......"

The chancellor also finds that there is not sufficient fireclay or quicksand in the strata above the coal in

question to cause any additional hazard by reason thereof. He also finds:

"There is no evidence to support the conclusion that any irreparable injury to the streets in question is likely to result from defendants' mining operations; that these operations are unlawful; or that they are likely to occasion any peril to the safety of the traveling public in and about the lawful use of the streets."

"The facts make out no case for equitable relief either as alleged in the bill or otherwise."

We find in the record evidence tending to support the above quoted findings, while there is some conflict.

The findings of fact in equity, on conflicting evidence, are entitled to the same weight as the verdict of a jury and will not be set aside on appeal, except for manifest error: Anthracite Lumber Co. v. Lucas, 249 Pa. 517.

Where the evidence is such as to require its submission to a jury in an action at law, the findings thereon in equity will not be set aside: Warner v. Hare, 154 Pa. 548.

Tested by the familiar rules as above stated, there is nothing before us to justify a reversal of the chancellor's findings of facts.

As the decree is warranted by those findings, it is not deemed important to consider separately the numerous assignments of error. And as the court below decided the case on the facts as found, aside from the question of the validity of the Act of 1913, and as the decree must be affirmed on those findings, it does not seem pertinent at this time to consider the constitutionality of the statute.

The decree is affirmed.