## John Hasel *v.* Herman Beilstein, Appellant.

*Gift—Confidential relation—Trust—Evidence.*

On a bill in equity to compel the reassignment and delivery of personal property, it appeared that the plaintiff, who was an elderly, illiterate man, unable to read or write English, or to speak it perfectly, had assigned and delivered all of his personal property, which constituted his whole estate, to the defendant, an intimate acquaintance, whose advice the old man was in the habit of seeking, and with whom he was accustomed to leave his papers and property. The court below found that the trans-

action was not a gift, but a "transfer to the defendant in trust and confidence to keep for the plaintiff, subject to his demands." The plaintiff testified to this effect, and his testimony was corroborated by that of another witness who stated that the defendant told him he only took care of the money, and that he exhibited a little book in which he kept the account "so that he could show it to the old man again." *Held*, (1) that the burden of proof was on the defendant to sustain the assignment as a gift; (2) that evidence of the penurious and miserly habits of the old man was admissible on the question whether or not the transfer was a gift; (3) that a decree in favor of the plaintiff on the ground that it was a transfer "to the defendant in trust and confidence to keep for the plaintiff subject to his demands," was based upon sufficient evidence, and should be sustained.

Argued Nov. 6, 1896. Appeal, No. 189, Oct. T., 1896, by defendant, from decree of C. P. No. 1, Allegheny Co., Dec. T., 1895, No. 338, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to compel a reassignment and redelivery of personal property.

The facts are stated in the opinion of the court below.

At the trial, Charles Ober, George Shillinger and Father Kemper testified under objection and exception that the plaintiff was a man of very penurious and miserly habits, and that he would not trust, or give anything to, any one. [13–17]

COLLIER, J., filed the following opinion:

### FINDINGS OF FACT.

In 1891 the plaintiff, John Hasel, then 75 years of age, old and unable to work, determined to go to the Soldiers' Home, at Dayton, Ohio. At that time he was possessed of the following property, viz: Three mortgages, the principal sums of which amounted to four thousand, seven hundred (4,700) dollars, cash on deposit in the Dollar Savings Bank of Pittsburg and in the German National Bank of Allegheny, and a one thousand (1,000) dollar bank note—these three items amounting to four thousand and fifty-five (4,055) dollars. These, with a small pension and a small amount of almost worthless furniture was all the property he possessed.

On September 12, 1891, the plaintiff gave into the possession of the defendant, the one thousand dollar bank note. On the

26th day of October, 1891, plaintiff, defendant and one John Shauber, Jr. went to the German National Bank of Allegheny City, and plaintiff drew his check in favor of the said John Shauber, Jr., for the whole amount of his deposit, viz : $2,155.34, which amount was placed to the credit of said Shauber. This transaction was wholly without consideration. Plaintiff's bank book was afterwards given into the care of the defendant. On the next day, October 27, 1891, plaintiff and defendant went to the Dollar Savings Bank of Pittsburg, and plaintiff transferred his entire deposit to the defendant, viz., nine hundred (900) dollars, without any consideration. On the next day, October 28, 1891, the plaintiff, at Esquire Brinker's office, made a will, in which he gave to his brother in Germany ten (10) dollars and all the rest of his property to the defendant, and to John Shauber, Jr., share and share alike. Beilstein and John Shauber, Jr., the same who had the day before received the deposit of plaintiff in the German National Bank, were both present at the making of the will. The will also made Herman Beilstein and John Shauber, Jr., executors. The plaintiff had also relatives in Butler county, Pennsylvania. This will went into the possession of the defendant. Immediately after the making of this will, the plaintiff and defendant went to the courthouse, and there the plaintiff assigned the three aforementioned mortgages to the defendant, viz., the Kirschner mortgage of $2,800; the Happ mortgage of $1,000 and the Wiegand mortgage of $900. The assignment of each of these mortgages is in the words following :

" For value received, I, John Hasel, mortgagee, do sell, assign, transfer, and set over to Herman Beilstein, his heirs and assigns, this mortgage and all moneys secured thereby. Witness my hand and seal, October 28th, 1891.

(Signed)                    " JOHN HASEL.        [Seal].
" Attest :    GEORGE T. HETZEL."

. No one was present when these assignments were made except the plaintiff and defendant and Mr. Hetzel, who wrote the assignments, and they were without consideration.

With the exception of what might be due on his pension, and the small lot of furniture aforementioned, the foregoing assignments and transfers comprised the plaintiff's entire estate, of

which John Shauber, Jr., got two thousand and one hundred and fifty-five (2,155) dollars, and the defendant, six thousand and six hundred (6,600) dollars.

On the 31st of October, 1891, the plaintiff was accepted by the proper authorities, and a few days after entered the " Home" at Dayton, Ohio.

In October, 1892, the plaintiff demanded of the defendant a return of the property transferred to him, and was refused, and has demanded it twice since and been refused.

The plaintiff could neither read or write English. He could sign his name in English, but understood the spoken language very imperfectly.    He was penurious, saving and close, to a very remarkable degree, even miserly.

For some time prior to these transactions the defendant, was custodian of his, the plaintiff's papers, mortgages, bonds, bank books, etc., advising him about some of his business, plaintiff having confidence in defendant, as defendant himself says, " After he got attached to me, he trusted in me."   [The defendant, though present at all the transfers of plaintiff's property, and at the transfers to himself he and the defendant alone were present, (except the officers who wrote the transfers) did not explain to plaintiff the nature and effect of the transfers.] [4] [Nor did the defendant, at the time of the transfer of the three mortgages to him—knowing that without consideration the plaintiff had then transferred away eight thousand, seven hundred and fifty-five (8,755) dollars of his property, and practically stripped himself in his old age of his entire estate— explain to the plaintiff the nature and effect of these assignments upon his future financial condition, or upon the will which he had just made, giving all his property to Beilstein and Shauber, share and share alike.] [5]   [At no time during these transactions did the plaintiff have independent advice or counsel from any one.] [6]

[We find that the plaintiff did not make a free and voluntary gift to the defendant of the property transferred to him, but that said property was transferred to the defendant in trust and confidence to keep for the plaintiff, subject to his demand;] [7] [and we further find that the plaintiff did not fully understand the nature and effect of the transfers of property made to the defendant; and that the gifts to Beilstein were not made in-

telligently, and with a full knowledge by plaintiff of the true character of the transactions.] [8]  On the mortgage given by William Kirschner, the defendant admits in his testimony that he has received $700 interest, and on Happ mortgage, $125, interest, and on the Wiegand mortgage, $45.00 interest.  The Happ mortgage was on the 5th day of February assigned to Martin Schaeffer by the defendant, and the Wiegand mortgage was assigned on the 26th day of December, 1891, by the defendant to the 12th Ward Premium B. & L. Association of Allegheny City.  It is also admitted that defendant drew $20.66 of the funds in the Dollar Savings Bank.

We find that the defendant did not receive any of the sums of $2,155 or of $161.25 deposited in the German National Bank, and that he cannot be charged therewith.

### CONCLUSIONS OF LAW.

[In our findings of fact that the plaintiff transferred his property to the defendant in trust and confidence to keep for him, subject to his demand, we acted under the well known rule that where the answer is a responsive one it must be overcome with two witnesses, or one witness and corroborative circumstances, but we do not believe we need have gone that far.  In cases like the present one we believe the rule to be as follows : Whenever a person obtains by voluntary donation a large pecuniary benefit from another, he is bound, if that transaction is questioned, to prove that the transaction was righteous, and that the donor voluntarily and deliberately did the act, knowing its nature and effect.  This rule is not confined to cases of attorney and client, parent and child, etc., but is general: Cook v. Lamotte, 15 Beavan, 234.

Again, " Whenever one person obtains by voluntary donation a large pecuniary benefit from another, the burden of proving that the transaction is righteous is upon the person taking the benefit, but proof that the donor knew and understood what he was doing is sufficient.  Where the donee occupies a confidential relation to the donor, and the amount of the gift bears a large proportion to the estate of the donor, the donee must prove that the gift was made intelligently, and with a full knowledge by the donor of the true character of the transaction : " Clark v. Clark, 174 Pa. 309.

Applying these rules, the defendant has not only failed to prove that the donor knew and understood what he was doing, its nature and effect, or that the gift was made intelligently, and with a full knowledge by the donor of the true character · of the transactions, but the testimony satisfies the court just the opposite was the case, and we have so found.] [9]

[As the Kirschner mortgage for $2,800 is still in the possession of the defendant, he must be decreed to reassign it to the plaintiff, and as the fund in the Dollar Savings Bank is in the name of the defendant, he must be decreed to retransfer it to the plaintiff. As the Happ and Wiegand mortgages have been disposed of by the defendant, amounting to $1,900, and as defendant has received $700 interest on the Kirschner mortgage, and $125 interest on the Happ mortgage, and $45.00 interest on the Wiegand mortgage, and also $20.66 from the Dollar Savings Bank account, the defendant must be decreed to pay to the plaintiff said sums, amounting to two thousand seven hundred and ninety dollars and sixty-six cents ($2,790.66), with interest at 6 per cent on the Happ and Wiegand mortgages from the date of their assignment by the defendant to date of the decree. As to the $1,000 loan charged in the bill, it must be dismissed without prejudice to proceed at law, and as to the two items of $2,155 and $161.25 in the German National Bank, the bill must also be dismissed. There must also be an injunction restraining defendant from disposing in any way of the Kirschner mortgage or the fund in the Dollar Savings Bank. Defendant to pay costs, etc.] [10]

### DECREE.

And now to wit, September 1, 1896, this cause came on to be heard at the above term and upon consideration thereof it is ordered, adjudged and decreed as follows, viz : The defendant, Herman Beilstein, shall forthwith reassign to the plaintiff, John Hasel, the mortgage given by William Kirschner to plaintiff for $2,800, recorded in the recorder's office in and for Allegheny county, in mortgage book, vol. 299, page 98. He shall also forthwith retransfer to him the fund in the Dollar Savings Bank of Pittsburg. It is further ordered, adjudged and decreed, that the plaintiff pay unto the said John Hasel the sum of two thousand seven hundred and ninety dollars and sixty-six cents

($2,790.66), being $1,900 on the Happ and Wiegand mortgages, $700 interest collected on the Kirschner mortgage, $125 interest on the Happ mortgage, and $45.00 on the Wiegand mortgage, and $20.66 drawn from the Dollar Savings Bank, together with interest at six per cent on the Happ and Wiegand mortgages from the date of their assignment by the defendant to the date of this decree, to wit: On the Happ mortgage from February 5, 1894, to September 1, 1896, $1,000, at six per cent, amounting to one hundred and fifty-four dollars and thirty-three cents ($154.33); and on the Wiegand mortgage of $900, interest at six per cent, from December 26, 1891 to September 1, 1896, amounting to two hundred and fifty-two dollars and ninety cents, ($252.90), making in all the sum of three thousand one hundred and ninety-seven dollars and eighty-nine cents ($3,197.89), to be paid by the defendant, to the plaintiff, John Hasel.

It is further ordered, adjudged and decreed that an injunction issue restraining the defendant, Herman Beilstein, from disposing in any way of the Kirschner mortgage, recorded in mortgage book 299, page 98, or the fund now remaining in the Dollar Savings Bank, of Pittsburg.

It is also ordered, adjudged and decreed that all costs of this proceeding be paid by the defendant herein.

*Errors assigned* among others were (4–10) portions of opinion as above, quoting them; (11) decree, quoting it; (13–17) rulings on evidence, quoting the bill of exceptions.

*James Fitzsimmons*, with him *A. H.* and *H. H. Rowand*, for appellant.—Unless undue influence is found on the part of the appellant, or unless some fraud or deceit has been practised, or unless the appellee was at that time of unsound mind, unless such proof appears, the court is not warranted in finding facts as indicated by his opinion: Clark v. Clark, 174 Pa. 309.

There was not one spark of evidence indicating that there was anything like a confidential relation existing between Hasel and Beilstein.

We submit to the court that the evidence in this case shows all the requisites of a good and valid gift of John Hasel to Herman Beilstein: Hunter v. Atkins, 3 Myl. & K. 113; Toker v. Toker, 31 Beav. 629; Villers v. Beaumont, 1 Vern. 100;

2 White & Tudor's Leading Cases in Equity, p. 582; 2 Kent's Commentaries, 583; Yard v. Patton, 1 Harris, 286; Phillips v. Meily, 106 Pa. 536; Jackson v. Payne, 114 Pa. 67; Jones v. Backus, 114 Pa. 132; North v. Williams, 120 Pa. 109; Greenfield's Est., 14 Pa. 489; Walsh's App., 122 Pa. 177; Kraus v. Stein, 173 Pa. 221; Fassett's App., 167 Pa. 451.

*J. McF. Carpenter,* with him *Samuel L. Dille,* for appellee.— Having set up a gift as a defense, it is incumbent upon the appellant to show that it was righteous, or it will be set aside in a court of equity. It must appear clearly and strongly that the donor knew and understood what he was doing, and the effect it might have in impairing his ability to provide for himself and others; that he acted on competent and independent advice, and had a full disclosure of the effects and consequences; and that he made the gift freely and voluntarily, wholly free from undue influence or solicitation on the part of the donee: Cooke v. Lamotte, 15 Beav. 234; Hunter v. Atkins, 3 Myl. and K. 113; 2 White & Tudor's Leading Cases in Equity, p. 596; Clark v. Clark, 174 Pa. 326; Hoghton v. Hoghton, 15 Beav. 278; Rhodes v. Bate, 1 Ch. App. 252; Darlington's App., 86 Pa. 512: Greenfield's Est., 14 Pa. 489.

The fact that the gift as claimed is irrevocable is sufficient of itself to cast the burden upon the donee: Russell's App., 75 Pa. 288; Miskey's App., 107 Pa. 629; Worrall's App., 110 Pa. 364.

OPINION BY MR. JUSTICE MITCHELL, January 4, 1897:

It may be seriously questioned whether the learned judge below did not state the law too broadly when he held the general rule to be that whenever a person obtains by voluntary donation a large pecuniary benefit from another, he has the burden of proof to sustain the transaction. There is high English authority for such position, though Lord Romilly, in Cooke v. Lamotte, 15 Beavan, 234, cited by the judge below, adopts it with much reserve, but the American courts have not usually required such proof from the donee until he is put on the defensive by the appearance in the case of some indication of weakness of mind, undue influence, fraud, deception, confidential relation, or other element to render the transaction at least suspicious. See Stepp v. Frampton, ante, p. 284.

But it is not necessary to enter on this debatable ground, as the donee in the present case clearly stood in confidential relation to the donor. The latter was old and illiterate, a German not able to read or write English, and speaking and understanding it imperfectly. The appellant was a younger man, also a German, but carrying on business in the ordinary way in an English speaking community. An intimacy sprang up between the two, resulting in the plaintiff making appellant's store a place of daily resort, putting his papers and property, mortgages, bonds, bank books, etc. in the latter's hands for safe keeping, and seeking his advice upon business matters. When under such circumstances the plaintiff by writings in the English language divested himself of his entire property, handing over the larger part to the appellant, and the rest to appellant's brother-in-law, Shauber, even if it was a gift, the rule of equity in its least stringent form requires that the donee should show that it was freely and voluntarily made, with full knowledge of the nature of the act, and its effect upon the donor in relation to his estate. The decree of the court below could well be sustained on this ground alone.

But the learned judge goes farther and finds that it was not a gift at all, but a transfer " to the defendant in trust and confidence to keep for the plaintiff, subject to his demand." This is decisive of the whole case and renders superfluous any discussion of the assignments of error to subordinate findings of fact. It is argued for appellant that this conclusion is reached by the court below in disregard of the weight always given in equity to a responsive answer in denial. But the learned judge states expressly that he had given the appellant the benefit of that rule, and after an examination of the evidence we find no reason to differ with his conclusion. The testimony of the plaintiff himself is supported by that of Fallhaber, that appellant told him he only took care of the money and exhibited a little book where he kept the account, "so that he could show it to the old man again." And the testimony of both receives strong corroboration from the circumstances of the case already noted.

The testimony objected to in the thirteenth to seventeenth assignments had some bearing on plaintiff's character and disposition with regard to money, and consequently on the probability

of his comprehension of what he was doing, and whether he was imposed on. It was therefore admissible on the question of gift, but as the court found there was no gift it becomes of no importance at all.

Appellant charges that plaintiff divested himself of his property in order to enter the Soldiers' Home, and thereby committed a fraud on the government which will prevent a court of equity from aiding him. It is sufficient to say that the evidence of such intent is slight, and there is no evidence at all that his having or not having such an amount of property had any bearing on his admission to the Home.

Decree affirmed with costs.