Estate of Robert Coleman, deceased.  Appeal of Louise Ybanez Anduaga, widow of George Dawson Coleman, deceased.

198  605
200  575
193      605
25 SC ¹647

*Deed—Parent and child—Evidence—Burden of proof—Fraud.*

Business dealings between parents and children and other near relatives are not per se fraudulent; they must be treated just as are the transactions between ordinary debtors and creditors, and where the bona fides of their transactions is attacked, the fraud must be clearly proved.

In a proceeding which involved the validity of a deed of all of a son's property to his mother, the consideration of which was the payment of a large annual income to himself, it appeared that the son disliked his relatives, and was averse to having the property go to them; that he was dissipated and his habits were those of a spendthrift; that he frequented the races, owned a stud of horses and a yacht; that he had declared that he had been unsuccessful in every venture, and that he abhorred business and sought only pleasure; that his mother was a good business woman; that she had paid large debts which he had improvidently contracted, and that she had saved his affairs; and there was no evidence of overreaching or selfish grasping of the son's property by her. *Held*, that the orphans' court was not in error in sustaining the deed and awarding the son's estate to his mother.

*Deed—Husband and wife—Fraud upon wife.*

Where a son, for a proper consideration and in pursuance of a proper motive, conveys all his estate to his mother, and some months afterwards becomes engaged to be married, and subsequently, but before his marriage, executes another deed to his mother which differs in no substantial particulars from the first deed, the second deed deprives the wife of no rights and defrauds her of no marital prospects.

Argued March 31, 1899.  Appeal, No. 395, Jan. T., 1898, by Louise Ybanez Anduaga, widow of George Dawson Coleman, deceased, from decree of O. C. Phila. Co., July T., 1879, No. 245, dismissing exceptions to adjudication.  Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ.  Affirmed.

Exceptions to adjudication.

The facts are fully stated in the opinion of the Supreme Court.  See also Coleman's Appeal, 185 Pa. 437.

*Errors assigned* were in dismissing exceptions to adjudication.

*R. L. Ashhurst* and *J. G. Johnson*, with them *Rowland Evans*, for appellant.—The donee being the parent of the donor, influence is assumed to have been exercised by the former, and it is incumbent on the parent taking the benefit to prove the righteousness of the transaction and to show that the child acted deliberately and advisedly : Savery v. King, 5 House of Lords Cases, 627 ; Turner v. Cullens, 7 Chancery App. Cases, 329 ; Miskey's App., 107 Pa. 630 ; Worrell's App., 110 Pa. 349 ; Clark v. Clark, 174 Pa. 336 ; Perry on Trusts, sec. 201 ; Wright v. Vanderplank, 8 DeG. M. & G. 133 ; Davis v. Strange, 86 Va. 808 ; Witridge v. Witridge, 76 Md. 54.

The deeds are prima facie void because the donee, who was largely benefited thereby, occupied a fiduciary and confidential relation to the donor as his attorney in fact and agent, which disqualified her from accepting such benefit without at least showing that the donor was properly and fully advised, and that the transaction was a righteous and proper one : Rhodes v. Bate, 1 Ch. App. Cases, 252 ; Greenfield's Est., 14 Pa. 489 ; Boyd v. Boyd, 66 Pa. 283 ; Cuthbertson's App., 97 Pa. 163 ; Frew v. Clark, 80 Pa. 170 ; Yardley v. Cuthbertson, 108 Pa. 395 ; Darlington's App., 86 Pa. 518 ; Neal v. Black, 177 Pa. 83 ; Stepp v. Frampton, 179 Pa. 284 ; Hasel v. Beilstein, 179 Pa. 563.

These voluntary deeds could not in any case be set up against the widow of the grantor ; she, having married after their execution, stands in the relation of a purchaser for value, and the deeds, the last two of which were evidently executed in contemplation of marriage and in fraud of the marital rights, are void against her : Duncan's App., 43 Pa. 67 ; Robinson v. Buck, 71 Pa. 392 ; Kline v. Kline, 57 Pa. 120 ; Hummell's App., 161 Pa. 215.

*Horace M. Rumsey* and *Paul Fuller*, of *Condert Brothers*, with them *I. Hazleton Mirkil* and *Francis E. Brewster*, for appellee. —The deeds from George Dawson Coleman to his mother bar any claim by his widow : Miskey's App., 107 Pa. 611 ; Kelly's App., 108 Pa. 29 ; Pattison v. Stewart, 6 W. & S. 72 ; Reehling v. Byers, 94 Pa. 316 ; 1 Story's Eq. sec. 309 ; Jenkins v. Pye, 12 Peters, 253.

The contention of the appellant that the deeds of George to

his mother were in fraud of marital rights is hardly worthy of serious consideration : Strathmore v. Bowes, 1 Ves. Jr. 22; Thomas v. Williams, Mos. 177.

The cases cited by the appellant upon the question of marital rights do not assist her. Thus, in Duncan's Appeal, 43 Pa. 67, the deed was made after the engagement, and two days before the marriage. In Robinson v. Buck, 71 Pa. 392, the deed was made the day of the marriage. In Kline v. Kline, 57 Pa. 120, a marriage contract was not enforced, it appearing that the parties were betrothed and the husband had deceived his wife as to his property. In Hummel's Estate, 161 Pa. (1894) 215, promissory notes, payable on the maker's death, were given for the purpose of defrauding the wife. The holders of the notes were parties to the fraud. The report does not show whether the maker of the notes was married or not at the time he gave them, but from the opinion of the court it is apparent that he was.

There being no contract or engagement to marry at the date of the deed of November 10, 1888, the same is binding upon the appellant. The equity in favor of the husband (in his intended wife's property) does not arise, unless in can be clearly made out that at the time of the conveyance of the property by the wife there was an engagement of marriage between them. A conveyance to be fraudulent must be made in contemplation of a particular marriage : Kerr on Fraud, 219; Gregory v. Winston, 23 Gratt. (Va.) 102.

So far as the distribution here is of personalty, the objection as to marital rights cannot apply : Lines v. Lines, 142 Pa. 149 ;. Lightfoot v. Colgin, 5 Mumford (Va.), 42; Cameron v. Cameron, 10 Smedes & Marshall (Miss.), 394.

OPINION BY MR. JUSTICE DEAN, December 30, 1899 :

In 1878, Robert Coleman, of Philadelphia, died in Paris, where he had resided for some years. He left surviving him, a widow, Rosalie Parant Coleman, a native of France, and one son, George Dawson Coleman, born October 15, 1862. He died testate, his will having been executed in Paris and bearing date July 23, 1878. While he had some property in France, the bulk of his estate was in Pennsylvania, consisting principally of an interest in the Cornwall ore banks in Lebanon

county; this interest yielding an annul income of about $100,000. The will gave to the widow, as dower, such interest as she would be entitled to under the laws of Pennsylvania and also such moneys, as he had stipulated to pay to her by an antenuptial marriage contract. The residue of his estate he gave to the Pennsylvania Company for Insurance on Lives and Granting Annuities and their successors, in trust for his son, George Dawson Coleman, with power of appointment to him by will. George Dawson Coleman lived all his life, up to the time of his marriage, with his mother in France. He became of age, October 15, 1883, and within a few weeks thereafter executed a power of attorney to his mother, appointing her his agent to demand and receive from his trustee all his income from his father's estate. Under this instrument she assumed and exercised a general supervision over his estate. He soon followed the power of attorney by a will, dated December 19, 1883, in which he devised and bequeathed his whole estate to his mother absolutely. On August 2, 1887, he, for the consideration of 100,000 francs to be paid on January 1, 1888, and the sum of 150,000 francs annually to be increased by an annual addition of 50,000 should he marry with her consent, conveyed to her his entire estate. This grant contained no words of inheritance. In the year following, on November 10, 1888, he delivered to his mother a second deed, conveying to her, her heirs and assigns, for the same consideration as in the first deed, his entire estate. The effect of the second deed, with the words of inheritance, was to pass to his mother his entire estate. This was followed by a third deed, dated January 3, 1889, by which, for the same consideration as in the first, he conveyed to his mother, her heirs and assigns, all the income, rents and revenue of the ore banks in Lebanon county, and any stocks or securities in the hands of his trustee derived from the estate of his father. On February 4, 1889, he married Louise Ybanez, this appellant; the marriage engagement preceded the actual nuptials about two months, but appears to have been broken off and then renewed in the interval; but the third deed postdated the original marriage contract. After living in the marriage relation about four months, they separated; the wife returned to her father, the husband to his mother; marital cohabitation was not resumed. He commenced proceedings in

divorce, which were still pending at the date of his death, October 16, 1891. No children were born of the marriage. After her husband's death, the widow married Anduaga, her present husband. The will of George Dawson Coleman, after a contest, was duly admitted to probate. See Coleman's Appeal, 185 Pa. 437. Soon after that decision, the account of the Pennsylvania Company, trustee, was brought before the orphans' court for audit. The widow of George claimed that her deceased husband had an estate in fee in the property devised to him by his father, and she, as widow, was entitled to one half the principal of the personal estate shown by the account. The mother of the husband resisted this claim and, standing on the three deeds mentioned, claimed the entire estate. To the admission of the deeds the son's widow objected, because : 1. The first deed never was recorded, and there was not sufficient proof of its execution. 2. As to the second deed, it was not recorded until after the death of George, and more than two years after his marriage. 3. As to the third one, it was executed on the eve of the appellant's marriage, and in fraud of her marital rights, and not recorded in Lebanon county, where the estate is situated, until after the marriage. 4. As to their purport and effect, generally, that they were made by a child to a parent for a very valuable property for a very inadequate consideration, without an accompanying offer to prove the absence of undue influence, or that the grantor understood the nature of the transaction ; further, that the grantee occupied towards the son a fiduciary relation, and they were therefore presumptively void; the burden was on the grantee to show that the transaction was in all particulars a fair one; and further, that the appellant had no notice of them before marriage, and therefore they were void as to her. All these objections were overruled by the auditing judge, PENROSE, and the deeds were admitted. Appellant then offered in evidence, the record of a French court, showing that a proceeding had been instituted by the son's widow against her mother-in-law, whereby she sought to hold the latter accountable for the son's money and property which had come into her hands. This record seemed to show, that that court had construed the deeds, and decided that they were not intended as absolute conveyances, but rather as powers enabling the mother to man-

age her son's business affairs, and ordered, that the mother account for the property before one of the judges of the court. This record was objected to by the mother, because it was not a full transcript of the proceeding, and the judgment did not purport to be a final one.   The court below, at first, sustained the objection, but before final hearing, suspended proceedings, that appellant might perfect the record, and by further proof show the judgment was final; this she subsequently did and showed, that an accounting had been had, which was not appealed from, resulting in a balance in favor of the widow against the mother.   The auditing judge ruled against appellant on all the points made by her, and awarded the entire balance in the account of the trustee to the mother, Rosalie Parant Coleman. Exceptions filed to the adjudication were overruled by the court in banc, and the award of the auditing judge was confirmed absolutely, hence this appeal by the son's widow.

We concede the case is not without difficulty, but we are of opinion, on the facts, that it is distinguishable from the cases cited by appellant, deciding that a deed to one occupying a fiduciary relation to the grantor is presumably void because of that relation.   The able counsel for appellee has exhaustively examined all these cases, and furnished us with a very fair and judicial criticism upon them, which we have verified by examination of the reported cases :

In Worrall's Appeal, 110 Pa. 349, a grantor set aside his deed obtained from him for $15.00, conveying property worth $13,000.   The deed was made within five weeks after grantor was of age.   He was sick.   It was to take the place of a will. The grantor recovered his health.   In Darlington's Estate, 147 Pa. 629, a man eighty-four years old, feeble and infirm, had signed a promissory note for $7,000 in favor of his agent.   It was not shown that he had read the note or knew the amount of it.   The note was claimed to have been given for past services and those to be rendered in the future.   There was no evidence that there had been any past service, and the amount of the note was clearly in excess of any probable future service the agent might render.   The total value of the estate of the principal was but $9,000.   In Unruh v. Lukens, 166 Pa. 324, a deed to the grantor's physician, who was also her attorney in fact, was set aside.   The deed had never been delivered to defendant, but

had been retained by the plaintiff's attorney, who also represented the defendant. The grantor had been told that the deed could be revoked at any time. There was no consideration for its execution, and it had never been explained. In Miskey's Appeal, 107 Pa. 611, there was a deed from a son to his father. The grantor had enfeebled his mind by liquor. The consideration was a trifle, and the property was worth over $70,000. The voluntary deed contained no power of revocation. The grantor had no counsel. The deed was prepared by the attorney of the grantee. Bristor v. Tasker, 135 Pa. 110, followed Miskey's Appeal. In this case, in addition to its resemblance to Miskey's Appeal, the plaintiff was misled by the grantees, who told her she could at any time revoke the deed. Clark v. Clark, 174 Pa. 309, was a contention between a mother and her son's administratrix, growing out of a partnership between the mother and son. The contract between the mother and son was enforced. The facts have no application whatever to the present case. In Boyd v. Boyd, 66 Pa. 283, the testator was of weak mind, illiterate, in extreme physical debility, ignorant of business, and the will was secured by the scrivener (not a relative). In Frew v. Clark, 80 Pa. 170, the paper (called a will) was sustained; it was written by the legatee. In Cuthbertson's Appeal, 97 Pa. 171; 108 Pa. 458, the will was written by the legatee who was a stranger to the testator, and it was held that it must appear that the testator was laboring under no mistake as to the value of his property, etc. The testator was in an extremely feeble condition. In Greenfield's Estate, 14 Pa. 489, the grantor, who was an old lady, directed that $40,000, which was one fifth of her estate, should be paid to trustees, who might demand this compensation and resign. The court doubted her understanding of the deed, and decided the case on the theory of a mere gift, without any consideration. In Darlington's Appeal, 86 Pa. 512, the grantor was dull of hearing, defective in speech, of infirm health, and mentally weak. In Neal v. Black, 177 Pa. 83, the deed was sustained, although the grantor was of weak, intellectual powers. In Stepp v. Frampton, 179 Pa. 284, the assignor was seventy-five years of age, mentally and physically infirm. In Hasel v. Beilstein, 179 Pa. 560, the deed or agreement was sustained, although the donor was old and illiterate. This case has no application

whatever.    In Hetrick's Appeal, 58 Pa. 477, an old man, broken by years, standing alone, without any help, too enfeebled in mind and body to be watchful, put all his property in the hands of an insolvent, in consideration of his support for life,—yet the deed was sustained.    Davis v. Strange, 86 Va. 808, and Witridge v. Witridge, 76 Md. 54, were both cases of voluntary deeds, without any consideration, and, indeed, most of the other cases cited by appellant are subject to this criticism.

The weight of opinion deducible from all the cases is that of Reehling v. Byers, 94 Pa. 316: " Business dealings between parents and children and other near relatives are not per se fraudulent; they must be treated just as are the transactions between ordinary debtors and creditors, and where the bona fides of their transactions is attacked, the fraud must be clearly proved."    And, as says STORY, " To consider a parent disqualified to take a voluntary deed from his child without consideration on account of their relationship is assuming a principle at war with all filial as well as parental duty and affection : "  1 Story's Equity, sec. 309.

Now take the facts as found in this case, and notice how different they are from those in the cases cited by appellant : The son disliked his relatives, and was averse to having the property go to them ; his habits were those of a spendthrift ; he gave himself up to wild extravagance and dissipation ; in 1884, his mother paid a single debt contracted by him of 160,000 francs ; she paid outstanding judgments against him ; he borrowed from one of his agents over 120,000 francs ; he frequented the races, owned a stud of horses and a yacht ; he said to his cousin he had been unsuccessful in every venture, and had run up debts ; that his mother was a good business woman, and had saved his affairs ; he abhorred business ; and sought only pleasure.    These facts, of themselves, it seems to us, sufficiently account for the action of the son.    Is any further scrutiny into the relations of the mother and son, or into the character of the transaction, necessary to show that it was a reasonable and proper one?    The grantor himself, conscious of his infirmities, and wisely apprehensive that in a short time his entire estate would be dissipated, conveys it to his mother, to whom he seems to have been most tenderly attached, stipulating for what most persons would consider a liberal annual income.    If

the annual income from the estate, even, was somewhat greater than the annual payment, he had the very reasonable, if not absolutely, assured prospect, that if he survived her, being an only son, at least the whole income, if not the principal, would be his. There is no evidence of overreaching or selfish grasping by the parent of the son's property. It was a contract which he ought to have made ; it was one in which a mother, moved by maternal affection and knowledge of his habits, ought to have joined.

As to the deeds being a fraud upon the wife's marital rights, the deed of November 10, 1888, was executed before there was any engagement to marry ; the third one, made afterwards, differs in no substantial particular from the second ; it, therefore, deprives her of no right, nor defrauds her of any marital prospect.

There is nothing calling for notice in the other assignments of error which has not properly been passed upon by the auditing judge and the court below. All are overruled, and the decree is affirmed.