## Lewis's Estate.

*Will—Issue devisavit vel non—Undue influence—Meretricious relation— Evidence—Refusal of issue.*

An American citizen living in France executed a will about twenty years before his death by which he gave an annuity to a Frenchwoman with whom he lived and sometimes held out as his wife. He gave all the residue of his estate to an uncle, who enjoyed his greatest confidence, with directions that if the uncle died in testator's lifetime, the residue should go to the uncle's children. Testator had no particular relations with, nor affection for, these children. About ten years after the making of the will the uncle died, and the testator interlined under the provision for the uncle the words " died, May, 1893." Shortly afterwards he made a codicil bequeathing all of his fortune to the woman with whom he lived. The testimony was explicit and unanswered, that at the date of the codicil testator was of sound and disposing mind. It appeared that the legatee mentioned in the codicil died two years before testator. She had lived with him twenty-five years, and there was nothing in the evidence to show that the esteem which he openly exhibited for her, and the devotion which she repaid him were not sincere. There was no testimony that the testator was coerced, nor that he did not exercise full sway over his own house, nor that access was denied to anyone who desired to see him. It appeared that after the codicil was written testator placed the will and codicil in an envelope and addressed it to an agent in Philadelphia, to whom it was delivered after his death. *Held,* that the issue on the ground of undue influence was properly refused.

Argued Jan. 13, 1905. Appeal, No. 177, Jan. T., 1904, by John T. Lewis et al., from decree of O. C. Phila. Co., April T.,

1904, No. 260, dismissing appeal from Register of Wills in Estate of Willing Francis Lewis, deceased. Before MIT-CHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Appeal from register of wills.

ASHMAN, J., filed the following opinion :

On October 25, 1883, the testator executed his will by which he gave to Marie Jeanne Jamain an annuity of 30,000 francs for life and certain personal effects absolutely and to his uncle the residue of his estate and in case of his death before the testator then to the surviving children, and other issue of the said uncle. Interlined in the instrument above the name of the uncle the words, " died May,. 1893 " were inserted, and in the margin appeared the following : " I give, bequeath my entire fortune to Marie Jeanne Jamain, without reservation and appoint the Fidelity Insurance and Trust Company my exr. Oct. 6, 1893." The will and codicil were in testator's handwriting. The testator was born in Philadelphia. His parents died when he was quite young, and thereafter he lived with his grandmother, until he reached his majority. He then went abroad, and resided in France until his death on August 22, 1902, at the age of fifty-seven years. He was on terms of the closest intimacy with his uncle, to whom the grandmother had committed the care of his estate ; and the relation of mutual confidence begun in his boyhood is shown by his correspondence to have continued throughout his life.

The point at issue is a narrow one. It is not contended that the testator was not of perfectly sane mind at the date of execution of his will, nor, aside from the inference of some loss of will power in the presence of undue influence, that he was not of full testamentary capacity when he executed the codicil. But it is claimed that the latter instrument was procured by the fraud and undue influence of the beneficiary therein named, or of one Pauline Etienne. The exceptants have raised a monument, in the shape of a portentous volume of testimony, to attest the industry with which they have sought to avoid the codicil ; but the material facts can be compressed within the limits of a few sentences.

During his residence in Paris the testator contracted an alliance with the woman he afterwards made his residuary legatee, which was uninterruptedly maintained for twenty-five years and until her death. They resided in Paris, where they occupied for at least fourteen years the same suite of apartments and drove out together almost daily, quitting the city in summer for a short stay at a watering place and spending the winter in Nice or its neighborhood. The proofs of their mutual affection and in particular of the sedulous care which the legatee bestowed upon the decedent in his sickness, are conclusive. His own testimony to this effect appears in the very terms of his gift in the will, which he declares was prompted by gratitude for her kindness and affection, and by the fact that she had more than once saved his life. They received few callers in Paris, but at Nice and other places, which they visited annually, the testator introduced the legatee as his wife. The indicia, from which in the cases undue influence has been found as a fact or as a reasonable inference, are here absolutely wanting. The disposition of the woman was described as uniformly amiable, and no sign of discord between the parties was apparent to the servants and neighbors, who are usually shrewd observers of household events. The will, about whose validity there is no dispute, was allowed by the testator to stand untouched until the death of the one relative to whom he was devotedly attached. When that event occurred, he noted it in the will, and opposite the note he wrote the codicil by which, instead of the uncle he substituted the legatee, and he placed the will thus altered in an envelope addressed to an agent in Philadelphia. An instrument thus written and retained by the testator with directions to transmit it at his death, to a foreign trustee, was not the method which would have been insisted upon by legatee who had influenced the gift by her cajolery or dominated the giver by her superior will power. On the contrary, it was the act of a testator who had a fixed purpose, based on a persuasive reason, and who knew how to carry that purpose into effect. With the death of his uncle, the object of the will had failed. It is true that he had provided that in the event of the uncle's death, in the lifetime of the testator, the estate should go to the children of the uncle. But the children stood to him in no closer relation, by birth or

association, than the remaining cousins, and were held by him in no higher esteem. One proof of this fact is that the correspondence which he had affectionately and continuously maintained with his uncle, was not followed even by a casual letter to the children. It is not surprising that as against remote kindred, from whom he had long been separated, the woman, who might plausibly claim in this jurisdiction as his lawful wife, and who for many years had served him with a wife's tenderness, should have had the first place in the testator's remembrance. This at least is the reasoning of common sense, as applied to human conduct and human affairs. It is also the reasoning of the law, which, in its maxims and practice, is solicitous to guard the right of every man to dispose of his property as he pleases. It acts in obedience to those maxims when it seeks to protect a testator from every attempt to unduly influence him in the making of his will. It declares that such attempt need not be made in the presence of the testator, but may operate from a distance and be hidden under a cunningly devised mask of pretended friendship. It has declared that an inference of such influence may be drawn from the circumstance that the beneficiary has stood in a confidential relation to the donor. In Herster v. Herster, 116 Pa. 612, it was said that undue influence may be exercised secretly and especially where a confidential relation exists between the principal devisee and the testator and they dwell together in the same house; and in Dean v. Negley, 41 Pa. 312, that the burden of disproving undue influence is on the beneficiary. The former of these cases was, however, overruled in Herster v. Herster, 122 Pa. 239. The facts developed in Dean v. Negley justified the language of the court; but the universality of the proposition that a meretricious relation between the testator and the legatee is of itself proof of undue influence, was denied in Rudy v. Ulrich, 69 Pa. 177, and Wainwright's Appeal, 89 Pa. 220; Yorke's Est., 185 Pa. 61, held that the burden of proof is shifted to the contestants when the testator, although enfeebled by disease, is shown to have had full testamentary capacity, even where the will was prepared by the confidential adviser to whom or to whose family the whole of testator's estate was bequeathed. In the case before us, the rule as to presumption of undue influence and as to the dis-

proval of that presumption, may be accepted in all its severity. The contestants, themselves, have done the work which might have been asked of their adversaries. The testimony is explicit and unanswered that at the time of executing the codicil the testator was of sound and disposing mind. The codicil is written in the firm handwriting which characterized the will of a date ten years earlier and the contemporary letters of the testator are those of an absolutely sane writer. There is not a word in all the testimony to indicate that while the legatee lived, the testator did not exercise full sway in his own house, nor that access was denied to any who desired to see him, nor that any jar occurred between the testator and the legatee, nor finally that the esteem which he openly exhibited for her, and the devotion with which she repaid him, were not sincere. We regard the codicil, in the light of all the testimony as the work of a testator of sound testamentary capacity, who was uninfluenced in its making by fraud, undue influence or coercion, and as such it was properly admitted to probate.

The issue is refused.

*Error assigned* was in dismissing the appeal.

*Sharswood Brinton* and *Geo. Tucker Bispham,* for appellant. —Undue influence may be exercised secretly as well as openly, and this is especially possible where a confidential relation exists between the principal devisee and the testator, and they dwell together in the same house. In such cases it is not easy to make out an allegation of undue influence by proof which is direct or positive, nor is it necessary to do so : Herster v. Herster, 116 Pa. 612 ; Yorke's Est. 185 Pa. 61 ; Scattergood v. Kirk, 192 Pa. 263.

A meretricious relation is a confidential relation in so far as it is governed by all the attributes of trust and confidence : Dean v. Negley, 41 Pa. 312 ; Reichenbach v. Ruddach, 127 Pa. 564 ; Rudy v. Ulrich, 69 Pa. 177 ; Wainwright's Appeal, 89 Pa. 220.

*Hampton L. Carson* and *Rowland Evans,* with them *Charles C. Townsend* and *John Marshall Gest,* for appellees.

PER CURIAM, February 13, 1905 :
This decree is affirmed on the opinion of the court below.