# Weber et al., Appellants, *v.* Kline.

*Gift—Legality—Meretricious relation—Fraud—Undue influence—Weakness—Burden of proof—Gift inter vivos.*

1. A presumption of illegality of a gift does not arise from a meretricious relation.

2. The burden of showing both incapacity and undue influence in connection with a gift rests upon the party asserting such fact.

3. But where fraud, confidential relation, weakness of mind, or gross deception are shown in connection with a gift, the burden is on the recipient to show that the gift was the free, voluntary and intelligent act of the person making it.

4. Where a man with mental capacity and not subject to undue influence or fraud places money in the account of a woman with whom he has had meretricious relations, and the latter checks it out, purchases mortgages with it, and exercises complete domain over it, there is a clear intent to pass title to the money, and a gift inter vivos is complete.

*Equity—Findings of chancellor—Gifts.*

5. The findings of a chancellor based on evidence and approved by the court below that a gift was a free, voluntary and understood act of the donor, has the weight of a verdict of a jury, and will not be disturbed on appeal.

Argued January 24, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 86, Jan. T., 1928, by plaintiffs, from decree of C. P. Berks Co., Equity Docket 1923, No. 1366, dismissing bill in equity, in case of Rebecca C. Weber et al., administrators of Harry C. Weber, deceased, v. Katherine M. Kline et al. Affirmed.

Bill in equity for account and payment of moneys. Before SCHAEFFER, P. J.

The opinion of the Supreme Court states the facts.

Bill dismissed. Plaintiffs appealed.

*Error assigned,* inter alia, was decree, quoting it.


*Cyrus G. Derr,* with him *C. H. Ruhl,* for appellants, cited: Reeme v. Parthemere, 8 Pa. 460; Miller's App., 179 Pa. 645.


*Joseph R. Dickinson,* with him *J. Howard Jacobs,* for appellee, cited: Nace v. Boyer, 30 Pa. 99; Graham v. Pancoast, 30 Pa. 89; Aiman v. Stout, 42 Pa. 114; Moorhead v. Scovel, 210 Pa. 446; DeHaven's App., 75 Pa. 337; Eddey's App., 109 Pa. 406; Kraus v. Stein, 173 Pa. 221; McIntosh v. Condron, 20 Pa. Superior Ct. 118; Robinson v. Robinson, 203 Pa. 400; Kustus v. Hager, 269 Pa. 103.


OPINION BY MR. JUSTICE KEPHART, March 12, 1928:

Plaintiffs, a widow and brother of Harry C. Weber, seek to set aside a gift to Katherine Kline, and compel her to return money received from their intestate in May, 1921. The proceeding was in equity to establish a trust as affecting certain mortgages in defendant's name as mortgagee. The court below, after an extended hearing, concluded that plaintiffs' claim was without merit, and refused a decree in their favor.

Weber, a manufacturer of boxes and badges, became acquainted with Miss Kline in 1907, when she was 22 years of age. That acquaintance developed into a meretricious relationship, which resulted in the birth of a child in 1909. His second wife, plaintiff in this bill, learned of the birth of this child, and, while she continued to live with her husband, their relations became quite strained. He left her in July, 1921. In 1915, Weber had engaged Miss Kline as a bookkeeper at his factory. She had purchased a house from him in 1913, and he frequently visited her at this place. But when he left his wife, he took up his residence in another part of Reading. In May, 1921, before he separated from his wife, Weber gave to Miss Kline $14,650. This was

deposited in the bank to her order, and was later invested in mortgages. It is this money that the plaintiffs seek to recover on the ground of mental incapacity to make a valid gift, and undue influence.

Where the validity of a gift or bequest is assailed by one having an interest to contest it, the primary and important question that arises is, On whom does the burden fall to show the gift valid or invalid in law? This question does not arise in any case unless it first appears, presumptively at least, that the donor had capacity to make the gift, and, as to gifts inter vivos, it must appear that the donor parted with dominion and control over the gift and there was an intention to part with title. When the latter appears in a gift inter vivos, there is presumption of capacity. In bequests, on proof of the due execution of a will, there is a similar presumption of capacity: Lawrence's Est., 286 Pa. 58, 63; Wertheimer's Est., 286 Pa. 155, 160.

The chief grounds on which gifts or bequests are most frequently attacked are lack of capacity and undue influence. Generally speaking, the burden of showing both incapacity and undue influence rests on those asserting the facts. But this rule does not apply where the relation of the parties to each other, or some vicious element in connection with the transaction, is such that the law compels the recipient of the bequest or gift to show that it was the free, voluntary and intelligent act of the person giving it. Though there may be capacity to give, the law, nevertheless, casts this burden on the recipient. The factors which bring this rule into action are fraud, confidential relation, weakness of mind not otherwise incapable, and gross deception. When these appear in the course of an investigation as to the validity of gifts, the burden of proof will immediately shift: Hasel v. Beilstein, 179 Pa. 560; Coleman's Est., 193 Pa. 605; Longenecker v. Zion Evangelical Lutheran Church, 200 Pa. 567, 578.

The court below found that Weber, in placing the money to Miss Kline's account in the bank, parted with its possession; and defendant, by checking it out in the purchase of mortgages, exercised complete dominion over it. There was an actual delivery, an intention to make it, and a clear intent to pass title: Reese v. Phila. Trust, etc. Co., 218 Pa. 150; Yeager's Est., 273 Pa. 359, 362. In the case now before us, there is neither fraud, deception, confidential relation, nor any other element that would swing the burden of proof to the defendant. A presumption of illegality of the gift does not arise from a meretricious relation: Main v. Ryder, 84 Pa. 217, 225; Lewis's Est., 210 Pa. 599.

The court below, however, because the evidence showed that Miss Kline had made some damaging statements having a tendency to show both incapacity and undue influence, placed on her the burden of proving by clear, convincing and affirmative evidence that the gift was the free, voluntary and intelligent act of the donor, so understood by him when he divested himself of possession and title: Gorson's Est., 137 Pa. 160; Stewart's Est., 137 Pa. 175, 183, 186; Robinson v. Powell, 210 Pa. 232, 243. The court then found that Miss Kline had met this burden. We have read the evidence with care, and are entirely satisfied with the conclusion of the court below that, "At the time of the donation here in question, Harry C. Weber, although diseased in body, was of sane mind, and competent to make the gift." With the presumption of sanity, fortified by the positive testimony as indicated, the decree of the court cannot be successfully challenged.

Was Weber subjected to undue influence by Miss Kline? In Wertheimer's Est., supra, (at p. 164), we said that it may be doubted whether "the rule in Dean v. Negley, 41 Pa. 312; Reichenbach v. Ruddach, 127 Pa. 564, and Snyder v. Erwin, 229 Pa. 644, 'that, where meretricious relation has been shown to have existed between the testator and the principal beneficiary under

his will and the will diverts the entire estate from the natural objects of the testator's bounty and gives it over to a woman he has just married and with whom adulterous commerce has been carried on, the presumption arises that the will was procured by undue influence,' is still the law: Ewart's Est., 246 Pa. 579, 585, 586; Kustus v. Hager, 269 Pa. 103, 110, 111, where it appears the rule has been considerably modified if not entirely departed from." The existence of a meretricious relation standing alone will not give rise to a presumption of undue influence: Wertheimer's Est., supra. Fetter's testimony as to the assistance given by Weber in placing the money, and his supervision over the entire matter, would show that his original act was free and voluntary. He told Judge STEVENS and Mr. Kantner "he wanted to take care of her because she had been a faithful employee for him for years, and because he had wronged her by having had a child with her, on account of which she had been driven from her home." His entire estate amounted to $60,000 before the gift to Miss Kline, and he had no children who were his lawful heirs at the time of his death. It follows that the conclusion of the court below,—that the donation was a free, voluntary and understood act of the donor,—was correct.

Even if we were disposed to think otherwise, we are met with this barrier: "The findings of a chancellor, based on evidence and approved by the court below, must be given the same weight as the verdict of a jury and will not be disturbed on appeal: Glenn v. Trees, 276 Pa. 165; Miller v. Trust Co., 285 Pa. 472; Houghton v. Kendrick, 285 Pa. 223": Kern v. Smith, 290 Pa. 566, 569.

The decree of the court below is affirmed at cost of appellants.