More *v.* People's Bank and Trust Co., Trustee, et al., Mrs. L. B. Smith, Appellant.

Argued May 14, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*John B. Brooks* and *W. R. Seabrook,* with them *Charles F. Haughney,* for appellant.—W. W. Jones, at time of making deed of trust, was mentally competent and there was no undue influence exercised over him sufficient to invalidate the deed of trust.

The Supreme Court has reversed the court below where the evidence against the validity of the deed of trust was much stronger than in the present case: Hamilton v. Fay, 283 Pa. 175; Keller v. Lawson, 261 Pa. 489; Kesler v. Hugus, 271 Pa. 512; Gongaware v. Donehoo, 255 Pa. 502; Moorhead v. Scovel, 210 Pa. 446; Aiman v. Stout, 42 Pa. 114.

The burden of proof is on plaintiff to show that Mr. Jones did not have sufficient mental capacity to make a deed of trust, and, in our opinion, that burden has not been met: Tetlow's Est., 269 Pa. 486.

Mr. Jones had a perfect right to make such a deed of trust as suited him: Nolan v. Nolan, 218 Pa. 138; Leech v. Leech, 1 Phila. 244.

Evidence of undue influence is not sufficient to set aside deed: Englert v. Englert, 198 Pa. 326; Koon's Est., 293 Pa. 465; Tetlow's Est., 269 Pa. 486; Doran's Case, 150 Pa. 98.

*Henry C. Bauer* and *Robert J. Firman,* for appellee.— We believe the proof overwhelmingly sustains plaintiffs' contention: Adams's Est., 220 Pa. 531; Mullett v. Hensel, 7 Pa. Superior Ct. 524.

The courts have repeatedly held that the findings of the court below will not be set aside except for plain error: Gundaker v. Ehrgott, 209 Pa. 284; Laning v. Darling, 209 Pa. 254; Fenn v. McCarrell, 208 Pa. 615; Pitts., etc., Bank v. Coal Co., 210 Pa. 76.

OPINION BY MR. JUSTICE SIMPSON, July 1, 1929:

The heir at law and next of kin of W. W. Jones, deceased, filed a bill in equity against Mrs. L. B. Smith, George D. Giddings, and The People's Bank & Trust Company, trustee under a deed of trust executed by said W. W. Jones, seeking to have the deed set aside. The trial judge found as ultimate facts "that at the time the said W. W. Jones made, executed and delivered the said deed of trust he was in poor health and in a weakened mental and physical condition, and was incompetent to transact business of any sort or nature whatever, [and] that he was unduly and illegally persuaded and induced by Mrs. L. B. Smith and George D. Giddings to execute the said deed of trust." The court in banc approved these findings, set aside the deed, directed the trust company to account to decedent's administrator for all the personal property it had received, and required Mrs. L. B. Smith to pay the costs. She alone appeals, and, in her statement of the questions involved, challenges only the accuracy of those ultimate findings of fact and the legal conclusion founded thereon. These points are, therefore, all that we need consider: Kennedy et al. v.

Rothrock Co., Inc., 261 Pa. 580; Whalen v. Smith Fire-proof Construction Co., 296 Pa. 10.

In this class of cases, where the opinions of witnesses play so prominent a part, it is of vital importance that there shall be an accurate picture of decedent and his surroundings during the time covered by their testimony. We will endeavor to give it here. At some unstated date prior to March 2, 1922, W. W. Jones had had a stroke of apoplexy. On that day his wife died, and from then on his mental and physical condition deteriorated. There was practically no dispute regarding the change in his physical condition, but much as to that of his mentality prior to the making of the deed of trust, though little as to his retrogression after that date. Many of defendants' witnesses thought he was competent when the deed was executed, because they considered him to be "as good as any old person," or "as near right as any old man of his age could be" etc., etc., but gave little or no testimony by which the court could determine the proper weight to be given to these opinions. After his wife's death, he continued to live for a short time with his son-in-law; but they did not get on well together, and thereafter he boarded with a number of other persons. Nearly all of these people testified to his incompetency while living with them, giving reasons for their belief; yet they accepted his checks in payment of board. He lived but a short time with all but three of them. He made wills in favor of two of the three, and the present deed of trust in favor of the third, this appellant, though he was not related by blood or marriage to any of them.

In January, 1926, while he was living with the second of the three, George D. Giddings, one of defendants, sold to decedent an electrical machine, known as a farador, which was supposed to expedite the circulation of the blood of those upon whom it was used. Giddings insisted that decedent should take the farador to appellant's home, to be treated by her, and took him there.

Up to this time decedent was not acquainted with her. She was an expert in the use of the machine, and for some time, beginning in the middle of January, 1926, she treated him daily. He spoke of her as his doctor, and while she was thus treating him he went to live with her. Immediately thereafter defendant Giddings sent a constable to get decedent's papers from his prior boarding house, and accompanied the constable most of the way, but kept out of sight of those in the house. No reason appears why this extraordinary course should have been taken. Six days after decedent began to live with appellant, she borrowed from him the sum of $1,000, without security, giving to him a note for that amount, payable at the expiration of five years. It is still unpaid. Shortly thereafter, when decedent spoke of making a new will, some one, probably appellant, suggested a deed of trust instead, and this was the subject of frequent conversations. He told several witnesses that appellant threatened to have him sent to the Warren State Hospital for the Insane if he did not do what she wanted. When called as a witness, she did not deny this, save in so far as a denial may be inferred from her statement that the making and execution of the deed of trust was his voluntary act. She took him to her lawyer to have the deed drawn, the latter selected the Security Trust Company to be the trustee, and planned a meeting with the trust officer of that company, which was attended also by decedent and appellant. The trust officer would not proceed unless decedent was examined by a physician. Appellant then took him to two doctors who did not know him, and they questioned him in her presence. Their examination seems to have been somewhat perfunctory, possibly because, as they explained, they were only asked to say whether he was competent to execute a deed of trust. One said his mind was "not weak; it is purely what I call senile—lost memory"; both said he was competent to execute a deed of trust, though, so far as appears, neither asked him

about the terms of the one proposed, the extent of his estate, or the natural objects of his bounty, and they agree that his mind steadily failed thereafter.

When the result of these examinations was reported to the trust officer, he hesitatingly decided to go ahead. It was then arranged that the whole of decedent's estate should be placed in trust, but appellant (decedent then being, as the trust officer said, under her domination) refused to allow her $1,000 note to be included in it. A few days later she called upon the trust officer and asked him to leave the note out of the trust agreement. He refused to do so, because decedent had said he wanted his whole estate to be in the trust, whereupon she went away, and a short time thereafter brought a written order from decedent to deliver the $1,000 note to her. The trust officer would not give it to her because he feared decedent would not get it, but said he would give it to decedent. On March 4, 1926, the latter came with appellant and defendant Giddings, and received all the papers held by the trust officer.

Appellant, through her attorney, then induced the People's Bank & Trust Company, one of defendants, to act as trustee, and at once drew the deed of trust now in controversy, which appellant and her witnesses testified was read twice to decedent before execution, once by the lawyer, and once by appellant, she, the lawyer and defendant Giddings being present on both occasions. Decedent was then about seventy-five years old. The deed irrevocably conveys an unvalued piece of real estate and certain personalty, scheduled as worth $10,796, but did not embrace the $1,000 note, which was not included, though decedent intended it should be. The transfer is upon an active trust; out of the income only, decedent was to get $25 a month "for the providing of necessary and proper wearing apparel"; appellant was to get out of income and principal $15 per week, for his board and lodging, as long as he lived, without any deductions for his absences; in case of his sickness or in-

jury, the expenses were to be paid out of income and principal; at his death, he was to be buried at a cost of not exceeding $300, $200 was to be given to plaintiff, if she survived him, defendant Giddings was to get $500, and appellant was to get the balance of his estate, whether or not it was "covered by the provisions of this deed."

After the execution of the deed of trust, decedent continued to live with appellant, who received the $15 per week provided for. In September, 1926, he was taken ill, and died March 14, 1927. Two weeks later the present bill in equity was filed.

There was testimony by defendants' witnesses which, if believed, would negative the natural conclusion of impaired mentality and undue influence, that would seem to be suggested by the facts pictured; but this testimony was not believed by the chancellor or the court in banc. From the foregoing facts, which are not substantially disputed, save as stated, it would probably be held that the burden of showing an absence of undue influence, was on appellant: Wilson v. Mitchell, 101 Pa. 495; Armor's Estate, 154 Pa. 517; Weber v. Kline, 293 Pa. 85. As shown above, the present case is not one where there was "the mere relation of......boarder and landlord," as in Doran, Executor v. McConlogue, 150 Pa. 98, relied on by appellant. On the contrary, it would seem to fall fairly within what we said in Adams's Estate, 220 Pa. 531, 533: "The general rule applicable to such cases is that although the evidence is not sufficient to establish testamentary incapacity,......but does show bodily infirmity and a greatly weakened mentality, a presumption of undue influence arises where a stranger to the blood of the testator, standing in a confidential relation, is benefited by the will which he has been instrumental in having executed." See also Gongaware v. Donehoo, 255 Pa. 502, 508. As already stated, appellant was not related to decedent, seemed to have great influence over him, had much to do with the execution of the deed, and was to receive the greater part of the estate.

We need not further pursue that subject, however. There was a large quantity of greatly conflicting testimony on the questions of mental incapacity and undue influence. If called upon to find the facts on these points, with only the printed record to help us, we probably would not feel as fully justified as the trial judge said he was, in concluding "that the evidence on the part of the complainant far outweighs that on the part of the respondent"; but it is clear that there was ample evidence, which, if believed by the chancellor and court below, as it was, fully justified the decree appealed from. Indeed, there was abundant testimony that both appellant and defendant Giddings admitted decedent's mental and physical incapacity. The rule is well and wisely settled that "the findings of a chancellor, based on evidence and approved by the court below, must be given the same weight as the verdict of a jury, and will not be disturbed on appeal" (Kern v. Smith, 290 Pa. 566, 569; Glenn v. Trees, 276 Pa. 165; Weber v. Kline, supra), and this includes the ultimate findings of fact, though inferential, as well as the primary facts disputed by the witnesses (Robb v. Stone, 296 Pa. 482), unless the court concludes that they are not proper inferences, which we would not be justified in doing in this case. Particularly is this general rule true where, as here, the trial judge saw and heard the witnesses (Clarkson v. Crawford, 285 Pa. 299, 303; Hall & Co. Inc., v. Lyon, Singer & Co., 286 Pa. 119), becoming thereby better able to judge of the proper weight to be given to their testimony than, from the printed record alone, is possible for us. Here, the learned president judge of the court below expressly says that he has "no hesitation [in reaching his conclusion] after having seen all the witnesses upon the stand and having heard them give their testimony and carefully considered it."

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.